8 U.S. 403
 4 Cranch 403
 2 L.Ed. 660
 STEAD'S EXECUTORS
v.
COURSE.
 February Term, 1808
 
 1
 ERROR to the circuit court for the district of Georgia, as a court of equity.
 
 
 2
 Stead's executors brought their bill in equity against Elizabeth Course, the widow, and Caroline Course, the infant daughter of Daniel Course, deceased, to set aside, as fraudulent, a deed of land made by Courvoisie, a collector of taxes for Chatham county, to Daniel Course, and to charge the land for payment of a debt due from the late firm of Rae and Somerville to the complainant's testator, according to a former decree of the court. The bill charges the land as being still the estate of John Rae, deceased, formerly one of the partners in the firm of Rae and Somerville, and that all the joint funds were exhausted.
 
 
 3
 There was no appearance for the defendant Caroline; but the defendant Elizabeth appeared, and pleaded, that her late husband, Daniel Course, purchased the land fairly and bona fide at public sale from the tax-gatherer, for the sum of 552 dollars and 89 cents, without notice of any claim, title or interest of the complainants in the said land, if any they have. The plea avers that the consideration money was paid to the tax-gatherer; that he had a right to sell the land for default in payment of taxes; that the taxes were not paid at the time of sale, which was publicly made, after legal notice; that Daniel Course took immediate possession, and died seised thereof, and at his death it descended to his heirs, of whom the defendant Elizabeth is one. The deed exhibited was dated May 5th, 1792.
 
 
 4
 The defendant Elizabeth also answered the bill, denying fraud, &c.
 
 
 5
 To the plea there was a replication, denying that the tax-gatherer had a right to sell the land; that the sale was publicly made after legal notice, and that Daniel Course was a fair and bona fide purchaser, for a valuable consideration, without notice; and averring that the pretended sale and conveyance were unfair, fraudulent and void.
 
 
 6
 On the 17th of May, 1805, the circuit sustained the plea, and dismissed the bill with costs.
 
 
 7
 The evidence and facts stated in the record are as follow:
 
 
 8
 1. The advertisement of the sale, in these words:
 
 
 9
 'Sale for Taxes.
 
 
 10
 'Will be sold, on Saturday, the 5th day of May, at the court-house in the city of Savannah, between the hours of twelve and one, 450 acres of land, lying and being on Pipemaker's creek, county of Chatham. Also, part of the lot No. 6, Percival ward, together with the house thereon, seized for the payment of the taxes of 1790 and 1791.
 
 
 11
 'FRANCIS COURVOISIE,
 
 
 12
 'T. C. C. C.'
 
 
 13
 2. The original grant from the province of Georgia to John Rae, dated November 2d, 1762, describing the land as follows: 'All that tract of land, containing 450 acres, situate and being in the parish of Christ's Church, in our province of Georgia, bounded on the north-east by the river Savannah, on the south-east by land of James Edward Powell, Esq. on the south-west by land of Isaac Young and land of the said John Rae, and on the northwest by Pipemaker's creek.'
 
 
 14
 3. A certificate of a return of taxable property belonging to the estate of Robert Rae, made by Samuel Hammond, Esq. for the year 1971, viz. Chatham county, 282 acres tide swamp on Hutchinson island; 450 acres pine barren, opposite the above, on Pipemaker's creek; Richmond and Franklin county, 1,400 acres oak and hiccory land; 56 negroes; one four-wheeled carriage.
 
 
 15
 4. The following letter from Hammond to the collector, viz.
 
 
 16
 'Sir.
 
 
 17
 'As you are compelling me to pay the taxes due by the estate of Robert Rae, deceased, for the years 1790 and 1791, and as I have no monies in my hands of the estate, or able to raise the sum due out of my own resources, and the law allowing me the privilege of pointing to property of the estate, you are hereby noted to levy on 450 acres of land in Chatham county, laying and being on Pipemaker's creek.
 
 
 18
 'I am your obedient servant,
 
 
 19
 'SAMUEL HAMMOND.
 
 
 20
 'F. Courvoisie, Tax-Collector.
 
 
 21
 '2d April, 1792.'
 
 
 22
 There was also evidence that the land came by descent or devise from John Rae, the original grantee, to Robert Rae, whose widow (the mother of the defendant, Elizabeth Course) afterwards married Samuel Hammond.
 
 
 23
 It was also stated as a fact, that 'the relationship between the wife of Daniel Course and the wife of Samuel Hammond, appeared to the court the only evidence from which it could be inferred that Course participated in the fraud, or had a knowledge of it.'
 
 
 24
 By the tax laws of Georgia for 1790 and 1791, tide swamps of the first quality are valued at 97 shillings per acre, second quality at 60 shillings, and third quality at 37 shillings; pine barrens adjoining tide swamps, and within three miles of tide water, at 15 shillings per acre; oak and hiccory lands of the first quality at 15 shillings per acre, second quality 7 shillings, third quality 4 shillings. The tax for 1790 was ten shillings, and for 1791 six shillings, on every hundred pounds' value of the lands. The taxes were to be paid by the 15th of December, and it was enacted, that 'in case of default, the collector of the county where such defaulter shall happen shall immediately proceed against such defaulter by distress and sale of the goods and chattels, if any be found, otherwise on the land of such defaulter, or so much thereof as will pay the amount of the taxes due, with costs; and in all such cases to make titles to purchasers of the property sold as aforesaid.'
 
 
 25
 The collectors were required to close their accounts by the 1st of March, and deliver the same to the treasurer, and after deducting two and a half per cent on all such taxes as they shall receive, pay the remainder to the treasurer.
 
 
 26
 P. B. Key, for the plaintiffs in error.
 
 
 27
 1. The plea is substantially defective.
 
 
 28
 1st. In not averring a seisin in some person who was liable for taxes.
 
 
 29
 2d. In not averring that there was no personal property which might be distrained for the taxes, for it was only in default of personal property that the collector was authorised by law to sell the land; and,
 
 
 30
 3d. In not averring that Daniel Course had not notice of the complainants' claim before he paid the purchase money.
 
 
 31
 A purchase consists of a number of separate acts, such as the agreement, the deed, the payment, &c. If, before the last act be done, he obtains notice, he gains no title in equity. Even if he has paid the money, but not received the deed at the time of notice, he is not a purchaser without notice.
 
 
 32
 The same strictness is required in pleading in equity as at common law. A plea in equity must of itself constitute a complete defence. It can derive no aid from the answer. The answer cannot come into view until the plea be disposed of. If the plea be good the answer is unnecessary; and in considering the validity of the plea, every allegation of the bill, not answered by the plea, is to be taken to be true. Mitford, 15. 177. 2 Atk. 630. Story v. Windsor.
 
 
 33
 2. But if these defects of the plea should be considered as cured by the replication, yet it appears upon the whole record that the facts of the plea are not true, and that the sale of the collector transferred no right in the land to Daniel Course.
 
 
 34
 1st. The sale and conveyance were fraudulent and void.
 
 
 35
 2d. The collector had no authority, under the circumstances of the case, to sell; and if he had authority, he has not executed it legally.
 
 
 36
 1. The sale was fraudulent. The circumstances indicating fraud are, that the lands were liable in equity to the debts of John Rae. That the taxes were not paid for 1790 and 1791, although there was personal estate enough in the hands of the representatives of Robert Rae, in whose occupation the lands were, to pay them. This appears by Hammond's return of property, in which he has returned 56 negroes as the property of Robert Rae. That notwithstanding this personal property was in his hands, Hammond, who had married Robert Rae's widow, the mother of the defendant Elizabeth Course, not only permitted the land to be sold for taxes, but requested it might be sold, and pointed out this very land as the object of sale. The advertisement described the land by its least notorious appellation. It mentions neither the name of the owner of the land, nor the amount of taxes due. Hammond's son-in-law, the husband of the defendant, became the purchaser. There can be no doubt that he must have known the situation of the estate. He knew it was liable for the debts of John Rae. He knew that there was personal estate sufficient to pay the taxes. He knew that his father-in-law ought to have paid them; and he knew that he had directed the collector to sell the land. He knew the price which he gave for the land was far below its value; for the bill states it was sold in 1799 for 2,386 dollars, and the defendant, in her answer, says that it was then sold far below its value. He and his father-in-law and their wives were the representatives of Robert Rae, and were the only persons, except creditors, who were interested in the lands. These circumstances go strongly to show that the sale by the collector was only the means used to defeat the creditors of their just debts.
 
 
 37
 2. The collector had no authority to sell these lands for taxes.
 
 
 38
 1st. Because there was sufficient personal property, of which he had notice by the return of Hammond.
 
 
 39
 2d. Because he was not authorised in any case to sell more land than was sufficient to pay the taxes. The price which Daniel Course gave at this pretended sale was 552 dollars; the same lands, in 1799, sold under the decree of the court for 2,386 dollars, which the defendant in her answer says was far below their value, and yet the utmost amount of taxes which could be claimed, even supposing that all the taxes for 1790 and 1791, due from the estate of Robert Rae, for property wherever situated in Georgia, could be charged upon this one tract of land, would not exceed 150 dollars; and if, as we contend, this tract is liable for its own taxes only, the amount could not exceed 10 or 12 dollars. All special authorities are to be rigidly pursued and strictly construed. Cowp. 26.
 
 
 40
 3d. Because the collector could not sell after the first The 15th of December was the time limited for the debtors to pay their taxes, and from that time till the 1st of March was allowed to the collector to enforce payment by distress and sale; and on that day he was bound to close his accounts, and pay over the monies collected to the treasurer. Whether he had collected or not, he was bound to pay; and the law did not give him this summary remedy to indemnify himself for any taxes he might advance. If it did, it must give him a lien for an indefinite time, which cannot be supposed to have been the intention of the legislature. It is a special power, of an extrajudicial nature, to perform a duty in a certain time, and he is bound to pursue his authority strictly. If he paid the taxes which he had not collected, the power to distrain did not continue for his benefit. It is to be presumed that he did his duty, unless the contrary appears, and that he did pay the taxes which he was bound to collect, and had failed to collect, at the time when he was bound to close his accounts.
 
 
 41
 4th. Because the advertisement did not sufficiently describe the land. It is simply called 450 acres of land lying on Pipemaker's creek, without mentioning the Savannah river, on which it was also bounded, and which was a more notorious object. It neither mentions the person from whom the taxes were due, nor their amount, nor the name of the owner of the land. The advertisement has no date, nor is it stated what notice was given, nor how it was published.
 
 
 42
 There is no evidence of the amount of the taxes due, nor of the amount demanded; nor of the amount of taxes for the non-payment of which the land was sold.
 
 
 43
 It does not appear that Courvoisie was collector for the years 1790 and 1791.
 
 
 44
 Martin, contra.
 
 
 45
 The purchaser from a collector of taxes has a good title without deed. Upon the payment of the purchase money, the title vests by operation of law, in the same manner as it does in the case of a sale of lands under a fieri facias.
 
 
 46
 There is no fact stated in the bill to show the sale to be fraudulent. No advertisement is required by law in the proceedings of the collector. There is no replication to the answer, and therefore all the facts it contains are to be taken to be true, so far as it is responsive to the bill.
 
 
 47
 It was not necessary to state in the plea that any person was seised of the land, nor who was liable for the taxes. The property was liable for taxes whoever might be its owner.
 
 
 48
 When sales are made by a public officer, he is presumed to do his duty, and to have complied with all the requisites of the law, until the contrary is proved. Every presumption is in favour of the purchaser. The purchaser is not bound to know whether the taxes have been paid or not.
 
 
 49
 There is no evidence that there was personal property at the time the taxes were payable. The certificate of Hammond was a year preceding that time; and the personal property might have been sold; but if there was, the purchaser of the real estate is not to be prejudiced thereby; it is a matter between the person liable for taxes and the officer who sold the land when he might have sold the personal estate.
 
 
 50
 If an executor have power by will to sell land for payment of debts, in case of a deficiency of personal assets, and he sells, although the personal assets were sufficient, yet the purchaser of the land will be protected. 1 Eq. Ca. Ab. 358, 359. 2 P. Wms. 148. 2 Cha. Ca. 115.
 
 
 51
 The collector had a right to sell this land to pay all the taxes due from Robert Rae's estate, wherever situated; and it is immaterial at what price Daniel Course purchased the land, if the sale was fairly made.
 
 
 52
 Hammond was not bound to pay the taxes on this land, if he knew that it was liable to the claim of the complainants. It would have been a waste of the estate of Robert Rae.
 
 
 53
 The imperfect description of the land is no evidence of fraud in the collector; he advertised it by the name stated in the return of Hammond. He was not obliged to describe it as lying on the Savannah. The law did not require him to name the person who had title to or was in possession of the land, nor the name of the person liable for the taxes, nor their amount. There is no proof of fraud but what arises from those circumstances, and the relationship between Mrs. Hammond and Mrs. Course; and these are only circumstances, which at most may excite a suspicion. The presumption of law is always against fraud. It must always be proved. And unless it be not only proved, but brought home to the purchaser, the sale cannot be set aside.
 
 
 54
 P. B. Key, in reply.
 
 
 55
 The plea admits every thing in the bill not denied by the plea, and although there be also an answer, and no replication to that answer, yet the facts stated in the answer cannot be brought in aid of the plea. It must stand on its own foundation.
 
 
 56
 The answer cannot be brought into view until the question upon the plea be decided.
 
 
 57
 It was not necessary for the bill to state all the facts which may be given in evidence of fraud. It is sufficient if fraud be positively charged in general terms.
 
 
 58
 The rule of law is not that every thing is to be presumed in favour of the purchaser; but that a purchaser who claims title under a special limited authority, a power naked and without interest, must show that the power has been strictly pursued.
 
 
 59
 The doctrine advanced on the other side, that whether the taxes were due or not, the purchaser is protected in his title, is hazardous in the extreme; it would subject all our estates to the control of a collector of taxes.
 
 
 60
 The cases cited do not support the doctrine. They only show that, where lands are devised for the payment of debts generally, the purchaser is not bound to see to the application of the money; or to inquire whether there be personal estate sufficient to pay the debts; but if lands are devised to pay certain debts specified in a schedule, there the purchaser must see to the application of the money. The case cited from 2 P. Wms. 148. was a case of a term for years only, which the executor had a right to sell as personal estate.
 
 
 61
 The sound rule of law is, that no man shall be permitted to sell the estate of another, without an express delegated authority; and he who claims under such an authority must show that it has been strictly pursued. Caveat emptor, when he buys property from a man who is not the owner of it.
 
 
 62
 Property in one county could not be liable for taxes on property in another county. There were different collectors in different counties, who had separate and independent powers.
 
 March 14.
 
 63
 MARSHALL, Ch. J. delivered the opinion of the court, as follows:
 
 
 64
 The plaintiffs, who were the creditors of Rae and Somerville, brought this bill to subject a tract of land in the possession of the defendants to the payment of a debt for which they had obtained a decree against Rae and Somerville.
 
 
 65
 The defendants plead that Daniel Course, under whom they claim by descent, is a fair purchaser, for a valuable consideration, of the premises in question, at a sale thereof, by the collector of taxes for the county in which they lie, made for taxes in arrear. The defendant also answered, denying fraud.
 
 
 66
 A replication was filed to this plea, and on a hearing it was sustained, and the bill dismissed.
 
 
 67
 In this case the merits of the claim cannot be examined. The only questions before this court are upon the sufficiency of the plea to bar the action, and the sufficiency of the testimony to support the plea as pleaded.
 
 
 68
 On the first point, the counsel for the plaintiff has adduced authority which would certainly apply strongly, if not conclusively in his favour, if a special demurrer had been filed to the plea: But as issue has been taken on it, the court thinks it sufficient, since it contains, in substance, matter which, if true, would bar the action.
 
 
 69
 The replication puts the matter of the plea in issue, and it is incumbent on the defendants to support it. They prove a sale by the collector on account of taxes, and adduce a deed conveying the premises to the purchaser. But this testimony alone is not sufficient to support the plea. The validity of the sale is the subject of controversy, and its validity depends on the authority of the collector to sell, and on the fairness of the transaction. It would be going too far to say that a collector selling land with or without authority, could, by his conveyance, transfer the title of the rightful proprietor. He must act in conformity with the law from which his power is derived, and the purchaser is bound to inquire whether he has so acted. It is true that full evidence of every minute circumstance ought not, especially at a distant day, to be required. From the establishment of some facts, it is possible that others may be presumed, and less than positive testimony may establish facts. In this case, as in all others depending on testimony, a sound discretion, regulated by the law of evidence, will be exercised. But it is incumbent on the vendee to prove the authority to sell, and the question respecting the fairness of the sale will then stand on the same principles with any other transaction in which fraud is charged.
 
 
 70
 In examining the law under which this sale was made, the court perceives that the collector is authorised to sell land only on the deficiency of personal estate; and then to sell only so much as is necessary to pay the tax in arrear. In this case a sale is made of a whole tract of land, without specifying the amount of taxes actually due for which that land was liable and could be sold. This is proceeding in a manner not strictly regular. The sale ought to have been of so much of the land as would satisfy the tax in arrear. Should it be true that the land was actually liable for the whole sum for which it sold, it would still be incumbent on the vendee to prove that fact; for it cannot be presumed. Every presumption arising from the testimony in the cause is against it.
 
 
 71
 Had this fact been established, the court is inclined to think that the circumstances of the case as stated, though not perhaps amounting to proof of fraud, afford such presumptions as would render a final decree, without further testimony, unsatisfactory, and that an issue ought to have been directed on the question whether the sale was fraudulent or not. But if a whole tract of land was sold when a small part of it would have been sufficient for the taxes, which at present appears to be the case, the collector unquestionably exceeded his authority, and the plea cannot be substained.
 
 
 72
 It is, therefore, the opinion of the court, that there is error in the decree of the circuit court for the district of Georgia, in sustaining the plea of the defendants, and dismissing the bill of the plaintiffs, and that the said decree ought to be reversed and annulled, and the cause remanded, with directions that the defendants shall answer over, and that further proceedings be had in the said cause, according to equity.
 
 
 73
 Decree reversed.