JACKSON, *ex dem.* COOK and others, *against* SHEPARD.

Jackson
v.
Shepard.

EJECTMENT for 30 acres of land in Moreau, Saratoga county, tried at the circuit in that county, December 10th, 1824, before WALWORTH, C. Judge.

The plaintiff claimed title to the premises in question under a sale, to pay the United States direct tax; which he claimed to have been made pursuant to the law of the United States, of July 22d, 1813. He was nonsuited at the trial, by the judge, on facts which are sufficiently detailed in the opinion of the court.

*J. L. Viele*, for the plaintiff, moved to set aside the nonsuit, and for a new trial. He cited 1 Phil. Ev. 302, 304, 312; 4 Dall. 415; 4 Cranch, 403; 9 Cranch, 64.

*E. Cowen*, contra, cited 4 Wheat. Rep. 77, and the cases there cited; 5 id. 116; 4 U. S. L. 557, 558, s. 21, 22.

*Curia, per* SUTHERLAND, J. The plaintiff's title depends on the validity of the deed of the 20th of December, 1816, from Thomas Palmer, collector of the revenue for the 11th collection district of the state of New York, to Samuel Cook, one of the lessors of the plaintiff. The deed was given upon a sale made in pursuance of the act for the assessment and collection of direct taxes and internal duties, passed July 22d, 1813, (4 U. S. L. 546, ch. 554.) The manner in which the collector is to proceed in the collection of the taxes imposed, and his authority to sell the houses and lands on which the tax is laid, under certain *circumstances, are embraced in the 21st and 22d sections of the act. The 21st section directs that each of the collectors, or his deputies, shall, within ten days after receiving his collection list, advertise in one newspaper printed in his collection district, if any there be, and by notifications to be posted up in at least four public places in his collection district, that the said tax has become due and payable;

The recitals in a collector's deed of lands, sold for taxes under the statute of the United States, for the assessment and collection of the direct tax, passed July 22d, 1813, (4 U. S. L. 546, ch. 554,) of the various steps preliminary to a sale required by the 21st and 22d sections of that act, are not even *prima facie* evidence; but must be proved independent of the deed. *E. g.* that the tax was demanded at the dwelling-house of the man to whom it was assessed; and that sufficient goods to satisfy the tax could not be found.

Where one has a special statute authority to convey lands on doing certain previous acts, the purchaser must show that the previous acts have all been performed, independent of the recitals in the deed of conveyance.

[*89]

and state the times and places at which he or they wiⅼ attend, to receive the same, &c.; and, with respect to persons who shall not attend according to such notification, it shall be the duty of each collector, in person, or by deputy, to apply once at their respective dwellings within such district, and there demand the taxes payable by such person; and if such taxes shall not then be paid, or within 20 days thereafter, it shall be lawful for such collector, or his deputies, to proceed to collect the taxes by distress and sale of the goods, chattels, and effects of the persons delinquent. The 22d section provides, that whenever goods, chattels, or effects, sufficient to satisfy any tax upon dwelling houses or lands, and their improvements, owned, occupied, or superintended by persons known and residing within the same collection district, cannot be found, the collector, having first advertised the same for thirty days in a newspaper within the collection district, if such there be, and having posted up, in at least ten public places within the same, a notification of the intended sale, thirty days previous thereto, shall proceed to sell at public sale so much of the property as may be necessary to satisfy the the taxes due.

From these provisions of the act, it appears, that the collector is bound to apply once at the dwelling house of each individual taxed; and there demand the taxes imposed on each. If not paid upon such demand, he can proceed to collect it by distress. And it is only in cases where no goods or chattels to satisfy the tax can be found, that the collector has authority to sell the real estate on which the tax is imposed.

The premises in question were assessed as the property of William C. Bussing, and taxed at $1 46; and there is *no evidence in the case, except the recitals contained in the collector's deed, that the tax was ever demanded at the dwelling house of Bussing, or that sufficient goods and chattels to satisfy the tax could not be found. The judge who tried the cause, decided, that the recitals in the deed were not evidence; and nonsuited the plaintiff for the want of competent proof of a compliance on the part of the col-

[*90]

lector, with the conditions precedent to his authority to sell and convey the land.

The case of *Williams, et al.* v. *Peyton's lessee,* 4 Wheat. 77, is precisely analogous; and fully sustains the decision at *nisi prius.* The defendant, in that case, was a purchaser at a sale made for the non-payment of the direct tax imposed by the act of congress of the 14th of July, 1798. He proved that the tax on the lands in controversy, had been charged to the plaintiffs; and that they had been sold for non-payment. He also gave in evidence a deed from the marshal of the district, for the premises in question, executed in pursuance of the act of the 3d of March, 1804. But he did not prove that the collector had advertised the land, and performed the other requisites of the law of congress; and it was held by the court, that as the collector had no general authority to sell lands for the non-payment of the direct tax; but a special power to sell in the particular cases mentioned in the act, those cases must exist, or his power to sell did not arise. That it was a mere naked power, not coupled with an interest; and that in all such cases, the law requires that every pre-requisite to the exercise of that power must precede its exercise; the agent must pursue the power, or his act will not be sustained by it.[1]

*Margin note:* ALBANY, Feb. 1827.

Jackson
v.
Shepard.

[1] In the case of *Williams* v. *Peyton,* (4 Wheat. Rep. 77,) Chief Justice Marshall, in delivering the opinion of the court, remarked that, "as the collector has no general authority to sell lands at his discretion for the non-payment of the direct tax, but a special power to sell in the particular cases described in the act, those cases must exist, or his power does not arise. It is a naked power, not coupled with an interest; and in all such cases, the law requires that every pre-requisite to the exercise of that power must precede its exercise; that the agent must pursue the power, or his act will not be sustained by it.

"This general proposition has not been controverted; but the plaintiffs in error contend, that a deed executed by a public officer, is *prima facie* evidence that every act which ought to precede that deed had preceded it. That this conveyance is good, unless the party contesting it can show that the officer failed to perform his duty.

"It is a general principle, that the party who sets up a title must furnish the evidence necessary to support it. If the validity of a deed depends on an act *in pais,* the party claiming under that deed is as much bound to prove the performance of the act, as he would be bound to prove any matter of record on which its validity might depend. It forms a part of his title;

[*91]

It was contended, in that case, that a deed, executed by a public officer, is, *prima facie*, evidence, that every act which ought to precede it, had preceded it; that the marshal's deed, therefore, must be considered valid and effectual, unless it was impeached by showing a failure in the performance of his duty. But it was answered by the court, that a party who sets up a title, must furnish the evidence necessary to support it. If the validity of a deed depends on an act *in pais*, the party claiming under that *deed, is as much bound to procure the performance of the act, as he would be to prove any matter of record on which

it is a link in the chain which is essential to its continuity, and which it is incumbent on him to preserve. These facts should be examined by him before he becomes a purchaser, and the evidence of them should be preserved as a necessary muniment of title. If this be true in the general, is there anything which will render the principle inapplicable to the case of lands sold for the non-payment of taxes? In the act of congress, there is no declaration that these conveyances shall be deemed *prima facie* evidence of the validity of the sale. Is the nature of the transaction such, that a court ought to presume in its favor anything which does not appear, or ought to relieve the party claiming under it from the burthen of proving its correctness?

"Although this question may not have been expressly, and in terms decided in this court, yet decisions have been made which seem to recognize it. In the case of *Stead's Executors* v. *Course*, in which was drawn into question the validity of a sale made under the tax laws of the state of Georgia, this court said, 'it is incumbent on the vendee to prove the authority to sell.' And in *Parker* v. *Rule's lessee*, where a sale was declared to be invalid, because it did not appear in evidence that the publications required by the 9th section of the act had been made, the court inferred that they had not been made, and considered the case as if proof of the negative had been given by the plaintiff in ejectment. The question, whether the deed was *prima facie* evidence, it is true, was not made in that case; but its existence was too obvious to have escaped either the court or the bar. It was not made at the bar, because counsel did not rely on it, nor noticed by the judges, because it was not supposed to create any real difficulty.

"It has been said in argument, that in cases of sales under the tax laws of Kentucky, a deed is considered by the courts of that state as *prima facie* evidence that the sale was legal. Not having seen the case or the law, the court can form no opinion on it. In construing a statute of Kentucky, the decisions of the courts of Kentucky would unquestionably give the rule by which this court would be guided; but it is the peculiar province of this court to expound the acts of congress, and to give the rule by which they are to be construed."

its validity might depend.  It forms a part of his title; it

is a link in the chain, which is essential to its continuity, and which it is incumbent on him to preserve.  The facts should be examined by him before he becomes a purchaser; and the evidence of them should be preserved, as a necessary muniment of title.  It is then asked by the court, whether there is anything which will render that general principle inapplicable to the case of lands sold for the non-payment of taxes; and they held there was not: that all the acts required to be performed, previous to the right to sell for the non-payment of taxes, were susceptible of complete proof on the part of the officers of government; and consequently, on the part of the purchaser, who ought to preserve the evidence of them.  But many of them were of a nature which it would be difficult, if not impossible, for the party upon whom the tax was imposed, to prove had not been performed.  It is remarked, that the act of congress does not declare that these conveyances shall be *prima facie* evidence of the validity of the sale; and that the nature of the transaction was not such that a court ought to presume in its favor, any thing which did not appear.

The provisions of the act of 1798, are substantially the same with that of 1813.  The chief object of the principal provisions of both, is, to give full notice to the individual upon whom the tax is assessed; that he may voluntarily pay it, without resort to coercive means; and if coercion becomes necessary, that it shall, in the first instance, be directed to the personal property; and that the real estate on which the tax is imposed, shall not be resorted to, until the personal property is exhausted.

It is not perceived that the case at bar is, in any essential respect, distinguishable from that of *Williams* v. *Peyton's lessee.*  And the question being one which arises upon the construction of an act of congress, we should be disposed to yield to that decision, as authority, even if the reasons assigned for it by the court, were not entirely satisfactory *to us.  But such is not the case.  The principles on [*92] which it is founded, are of general authority and application, and seem to us to be incontrovertible.

ALBANY,
Feb. 1827.
———
Burlingame
v.
Burlingame.

The case of *Stead's ex'r.* v. *Course,* 4 Cranch, 403, and *Parker.* v. *Rule's lessee,* 9 Cranch, 64, maintain the same general principle.

The plaintiff was, therefore, properly nonsuited; and the motion to set it aside, and for a new trial, must be denied.

New trial denied.