O’Neall, J.
delivered the opinion of the Court.
If the decision of this case depended upon the grounds, on which the nonsuit was ordered on the Circuit, the motion to set it aside would be granted; for we do not think the pmLhuser was affected by any irregularity in the proceedings, of the. sheriff, after the re-sale. If the sheriff’s authority to sell were sufficient at the time of the re-sale, the purchaser ought to be protected. It is, however, by no means certain, that there was any irregularity after the re-sale. I incline to the opinion, that no return of the re-sale made by the sheriff or confirmation of it by the Court, was necessary. When a public officer, such as a sheriff, or commissioner in equity, is authorized by a Court of Record to sell lands, he is also authorized to convey ; and the validity of the title does not depend on the return, or report of the sale, and confirmation. Young v. Teague, decided at this place, December Term, 1829 * But if there was any irregularity-in the proceedings of the sheriff, in his not making a return to the rule, under which he sold, the Court,, at the trial, ought to have suffered the return to be made; for, at. most, it was only a defect in form, and not m substance, and w3as therefore amendable.
To sustain the nonsuit, other grounds have been presented to this Court; and upon one of them, a majority of the Court are of opinion, that the nonsuit must be sustained. We think that the sheriff re-sold before the expiration of the time allowed to the purchaser, Henry Schultz,- for the payment of the first moiet-- of the purchase money ; and that the re-sale was therefore void, and the purchaser’s title defective. And, as this conclusion is decisive of the case, it will not be necessary to express an opinion on any other of the various' grounds, which have been argued.
The land was, in the first instance, sold on the first Monday in June, 1827, being the fourth day of the month, under an order of the Court of Common Pleas, to foreclose a mortgage, *615 on a credit of six months for one moiety, and twelve months for the other moiety. The order directs the sheriff if the amount of the purchase money be, not paid when due, to re-sell for cash. The sheriff re-sold on Tuesday, the 4th day of December, in the same year, to the present plaintiff,
Arising out of these facts three questions present themselves for consideration: viz. 1st. What is meant by the term month: is it a calendar, or a lunar, month ? 2d. How is the time to be computed: inclusive, or exclusive, of the day of sale? 3d. Is the re-sale void 1
1st. The term month, in common parlance, is always understood to mean a calendar, and not a lunar, month. In the construction of statutes, it has been held, in this State, to mean the same. Alston v. Alston, 2 Treadw. 604. In judicial* proceedings, so far as usage can justify such a meaning, it has been uniformly so considered. hi matters of contract, I know of no instance in which it has received a different meaning. Indeed, it may be said, that the import of the term has become fixed by common understanding; and to adopt a different meaning now, would be to unsettle all contracts, and titles, and even judicial proceedings. The construction of the term, too, ought always to be according to the intention of the parties using it. If they-intend it to mean a lunar, and not a calendar month, then I admit that their intention should govern; and according to that, it would be held to be a lunar month. For, in the language of Le Blanc, Justice, 1 Maule & Selv. 117, “in matters of contract, the question will ever be, what was the intention of the parties, at the time when they made use of the word.”
In the case before us, what did the parties mean by a credit of six months? If is obvious that they meant six calendar months; for the order directs another moiety to be paid in twelve months. Twelve months constitute the calendar year, and whenever we speak of a credit of twelve months, we always mean, and are understood to speak of, a credit for the whole calendar year. It would then, on a fair construction, appear, that the credit of six months for the first moiety, was. intended, and understood, to mean a credit of the first six calendar months of the calendar year, commencing on the 4th of June. But the common understanding of the term would be enough for me to say, that calendars and not lunar months, were *616 meant, and intended by the parties. As a general rule, I would lay it down, that in all matters of contract, the term month must be understood to mean a calendar month, uBless the parties have expressly, or obviously, intended it to mean lunar. In this case, however, the meaning which I have given to the term month, is sustained by another view. The act of the Legislature, authorizing the Court of Common Pleas to foreclose mortgages, directs, that the sale shall'be made on a credit, not exceeding twelve months. The order must therefore receive the same construction which the act itself would receive. The term months, used in the act, would, I apprehend, admit of but one construction, viz. calendar months. Alston v. Alston, 2 Treadw. 604. Dowling v. Foxall, 1 Ball & Beatty, 193.
1 Faust 64.
2d. in computing the time, is the day of sale to be included, or excluded ? Without entering into a consideration of the distinctions, attempted to be drawn by the English Judges, between “ from the day of the date,” “ the date,” “ making,” or “ an act done,” it will be sufficient to say, that they were, all examined, and their inconsistencies and uncertainty pointed out by Lord Mansfield, in the case of Pugh v. The Duke of Leeds, Cowp. 717; and the rule, laid down by him, that the computation should be inclusive, or exclusive, according to the context, and subject, matter, and so as to effectuate the deeds of the parties, and not destroy them, is the rule of reason, and one which has ever since governed all subsequent cases. The intention of the parties, from this rule, must always regulate the computation : for the context, and subject matter, are but means by which the intention is collected; and to effectuate, and not destroy, the deed, is but giving effect to the intention, manifested by the execution of it, and which, if governed by artificial distinctions, might be void.
The case before us, tried by.this rule, will, I think, bring us to the conclusion, that the day of the sale ought to be excluded. It was a sale on a credit of six months, and if payment were not made at the end of that time, a re-sale was to take place on account of the purchaser. The intention of the parties, collected from the context and subject matter, and with a view to effect, and not destroy the right of the purchaser, would manifestly lead us to tho conclusion, that the day of sale was intended to be excluded: for until the purchase was made, no credit *617 «ould be given ; and after it was made, and the credit had begun, it w.ia to the purchaser important, that he should have all the time. What was his natural conclusion ? It certainly must have been, that the credit began after the sale, and as there are no fraction'- of a day, the day of sale must be excluded. To include the day of sale, would be to destroy the right of the purchaser; for. believing that he might be intitled to include the day of sale, he might have been prepared to pay the money on the last moment of the 4th December. Include the day of sale; and the rights of the purchaser are irrevocably defeated: exclude it; and the seller is only delayed twenty-four hours longer.
From the case of Pugh v. The Duke of Leeds, and succeeding cases, the rule may be deduced, that whenever a forfeiture would be incurred by considering “ the day of the date,” or “ an act done,” as inclusive, then it shall be considered exclusive. Lester v. Garland, 15 Vesey, 248. Dowling v. Foxall, 1 Ball & Beatty, 193. In the last mentioned case, Lord Chancellor Manners said, “ I apprehend that I am acting upon a principle well recognized by this Court, by rejecting that construction, in a doubtful case, which would divest a right, or work a forfeiture.” p. 196. To include the day of sale in this case, would he both to divest a right, and to work a forfeiture. The purchaser would lose his purchase, and incur a forfeiture of $33,000, the difference between the sale and re-sale. Say then, that it is even doubtful, whether the day of sale was intended to be included, or excluded ; and according to the rule, it ought to be excluded. If, however, it had, manifestly, appeared to be the intention of the parties, to include the day of sale, I would not hesitate to give the order that construction; for in all cases of contract, the intention of the parties, collected from the instrument itself, giving to its words the meaning, which in common parlance, they usually receive, is the governing principle. In other words, contracts are, most commonly, the law agreed upon by the parties.
What was meant by a credit of six months 1 Was it to commence on, or after, the day of sale? Most men, I apprehend, would not hesitate about answering, after it.- This answer, too, is necessarily the legal one. In law, there are no fractious of a day, unless it may be to give effect to a right, which would *618 be otherwise defeated. The sheriff was allowed from 11, A. M. to ^ p jyp ()j- 4^ junC) t0 effect the sale. He might have sold at the first, or the last moment of the time. If he sold at the last moment, the official day expired as the sale was finished, and the credit could' not commence until after it. If he sold at the first moment, it would result in the same thing, for until the close of his official day of sale, the day of credit would not begin. I11 this case, no fraction of a day can be allowed, and therefore the credit did not commence, until the first moment, of the natural day after the sale. I say that no fractions of a day in this case can be allowed, because the seller had no right which would otherwise be defeated, it is a mere question when money shall be due. The debt is not affected; but the time of payment is, perhaps, postponed a few hours, by this legal rule. Excluding the day of sale, and computing six calendar months, the credit did not expire until Tuesday the 4tb December; and the purchaser was intitled to the whole of that day to make the payment. Salk. 578. 1 Saund. 287. 4 T. R. 170. Hence, the sheriff re-sold, before he was authorized to do so by the order of the Court. |
3d. Is his re-sale void? That it is, cannot be questioned. Tiie sheriff, when acting without the pale of the authority conferred on him by law, is acting only as a private citizen; and the law gives no other, or higher sanction to his acts, than it would to those of any other. What power had the sheriff-to re-sell? None. The purchaser had all the day of the 4th of December to pay the money. If the sheriff sold before the expiration of that .day, he sold without authority. Is the purchaser at the re-sale affected by the sheriff’s want of authority ? Me certainly is. The order under which the sheriff sold, is a part of the title. If it was violated, in the re-sale being made before it was directed to be made, it follows that the purchase was not made under it, and the title of the purchaser is not derived from it. If the sheriff had sold under a judgment end execution, the purchaser would not have been affected by a mere irregularity: but if he bad sold before execution, the purchaser would have acquired no estate. W'hy 1 Became, as yet, the sheriff was not authorized to sell. If the judgment and execution were absolutely void, as in the case of' ’Jivsgrove v. Gordon, the purchaser would have acquired nothing by his *619 purchase. In the case put, the judgment and execution are part of, and indeed the predicate of the purchaser’s title. If they, or either of them, have not been rendered, or issued, at its inception, or if they are void, it follows that he has no ¡egal title. Here, the order authorizing the re-sale is part of the purchaser’s title; and upon its adduction in evidence, and proof of the re-sale, it appears, that it took place before the day of payment had elapsed. The purchaser therefore fails to connect his title, with that order. His deed from the sheriff, without the authority of the order, is oidy the deed of one William Thurmond. It conveys, therefore, no legal right under the order of sale.
The general rule as to purchasers at sheriff’s sales is, that where the defect in the proceedings is such an one as may be cured by consent, acquiescence, or amendment, it does not affect the title. But where it is a defect of substance, as a want of authority from the Court, or where the authority is absolutely void, it vitiates and destroys the sale and title under it. Mus-grove v. Gordon, decided at Columbia, May Term, 1829. Stead v. Course, 4 Cranch, 403.
From these views, it follows, that the re-sale was made without authority, and is therefore void; and that the purchaser can derive no title from it. The motion to set aside the nonsuit is therefore dismissed.
Johnson, J. concurred.
Motion refused.

 On an appeal in Equity.