## HUBBELL *vs.* WELDON and WELDON.

Where lands are sold under a tax sale, the owner, or occupant, is to be regarded after that as holding in subordination to the title of the purchaser—as quasi tenant to him, like a defendant in possession after sale of his real estate on judgment and execution. And the Session Laws of 1834, chap. 199, § 16, (act incorporating the city of Rochester,) place the occupants and owners on the footing of tenants holding over after the expiration of the term, without consent of their landlords. Their possession is, therefore, not adverse to the purchaser of premises sold for non-payment of taxes under that act, supposing the sale to be valid.

Where certain proceedings are authorized by statute, in derogation of the common law, by which the title to real property is taken from the owner and transfered to another, every requisite of the act, having the semblance of benefit to the former, must be strictly complied with. All tax-sales of real estate stand upon the footing of the execution of a naked power, and the proceedings preliminary to the consummation of the sale and transfer of title are to be judged of accordingly.

Accordingly, where a lot was sold in the city of Rochester for the non-pay-ment of a tax assessed on it, and the provisions of § 34 of Session Laws of 1834, chap. 199, which directs how the assessment roll shall be made out, had not been complied with, *held*, that the sale was invalid.

By the assessment roll it appeared that no *owner* or *occupant* was designated for a certain lot (No. 40) assessed, nor was it returned as non-resident land, nor was any other description of the premises given, except that the number "40" was written in the column under the head "lots," and the words "N. Trowbridge street" in the column designating the owners of the respective lots as far as given. *Held*, an insufficient description of the premises assessed.

The fifth subdivision of § 12 of 1 R. S., 391, does not dispense, where the land to be assessed is a full lot, with the particularity required by the previous parts of the section in the designation of the lands of non-residents; it relates simply to the description of the *quantity* of land assessed, providing that if such quantity be a full lot, the designation of the number of the lot is sufficient; otherwise, the quantity must be designated by boundaries, or in some other way, by which it may be known.

The same, as to the second subdivision of that section.

The description of land sold for non-payment of taxes should be, substantially at least, as full and definite in the notice of sale, as the description required to be given in the assessment roll.

A publication of the notice of sale once a week for six successive weeks in a newspaper of the city of Rochester, is all the publication required by Session Laws of 1834, chap. 199, § 14.

The defendant objected on the trial, that the lot which had been sold under a city tax sale and to which plaintiff claims title under a lease from the mayor of the city, was not legally assessed for taxes; that the proceedings to authorize the sale were not in conformity with the statute, according to the evidence as it stood, and that therefore the lease, under which the plaintiff claimed, was not warranted and void. The judge decided that the tax was legally imposed, that the proceedings were regular, and directed the jury to find for the plaintiff. *Held*, that according to the practice of the court, the question was sufficiently raised, and affirmed by the court to enable the defendant to avail himself of it.

*It seems*, that by the 34th section of the act, taken in connection with the revised statutes, where the land of a non-resident is taxed, it should be designated as such in the assessment roll.

EJECTMENT for lot No. 40 in the city of Rochester. The plaintiff claimed under a sale of the premises for a tax of $2,35 for improvement of Buffalo street in city of Rochester, and produced a title derived from a lease of Mr. H. Rochester, mayor of the city, dated 15 June, 1839, for the term of 200 years. Plaintiff then proved the defendants in possession, and rested.

The defendants in order to prove that the assessment for which the lot had been sold, and lease given, were unauthorized, illegal and void, produced the records of the common council by which it appeared; 1. That an ordinance was passed Dec. 8, 1835, to macadamize Buffalo street, from the west line of the burying ground lot to the west end of the bridge which crosses the canal; 2. Another ordinance, passed July 12, 1836, reciting the former, also that the expense of the improvement had been duly estimated at $7017.42, and declaring that the whole expense should be assessed upon the owners and occupants of lands and houses benefited, and that one tier of lots on both sides of North Trowbridge street as far north as the canal (including the premises in question) would be benefited, and directing assessments to be made on same.

The assessment roll was then produced, by which it appeared that no *owner* or *occupant* was designated for lot No. 44, nor was it returned as non-resident land, nor was any other description of the premises given than simply the number "40" in the column, under the head *lots*, except that "*N. Trowbridge street*" was written in the column designating the owners of the respective lots as far as given.

The defendants also gave in evidence the return of the collector of the city by which it appeared that the tax assessed upon the lot was unpaid. They also produced a file of a daily newspaper of the city, containing a notice of the sale of the lot in question, among others, for non-payment of taxes, which had been published once a week from 8th April to 18th May following.

The only description of the lot in the notice was as follows:

"Lots returned for Buffalo street improvement, middle section—names of possessors or reputed owners. Gen. tax —— of Ogden, lot 40, 2.35."

It appeared in evidence that lot 40 was a part of an allotment well known in the city as the King tract, and so appeared in all the maps, being a tract laid out into village or city lots. Bradford & King were the reputed owners of the tract.

The defendants then showed title to the premises in one Edwin Beers, and that they were occupying as his tenants.

The testimony having closed, the defendants' counsel asked the judge to charge, that, as it appeared the plaintiff was not the original lessee of the premises, and as at the time of the conveyance to him by Byington, the purchaser, the lot was held and occupied under an adverse title, the conveyance was void, and that plaintiff could not recover. The judge declined to so charge.

The counsel further insisted, that the lot was not legally assessed for the tax for which it was sold, and that the proceedings to authorize the sale were not correct as shown by the evidence given by the defendants, and that, therefore, the lease under which the plaintiff claimed title was not authorized by law and was void.

But the judge decided, that the tax was legally imposed on the lot, and that the proceedings to authorize the sale were correct, and directed the jury to find for the plaintiff. Exception. Verdict for plaintiff, and defendant now moves for a new trial on a bill of exceptions.

*By the Court,* NELSON, Ch. J.   1. The objection that the lot was held adversely at the time of the conveyance from Byington to the plaintiff, and the deed therefore void, was properly overruled; for assuming the tax sale valid, the owners or occupants are to be regarded after that as holding in subordination to the title of the purchaser—as quasí tenant to him, like a defendant in possession after sale of his real estate on judgment and execution.   (1 J. Cas., 153; 3 Caine's Cas., 188.)

The occupant and owner are also put on the footing of tenants holding over after the expiration of the term by the statute.   (Session Laws of 1834, p. 308, § 16.)

II. Whether the lot in question is to be regarded as occupied or vacant, I am of opinion upon the evidence before us that the sale can not be upheld.

Section thirty-four of the charter of the city (Sess. Laws of 1834, p. 323,) provides, that the assessors shall make out an assessment roll in which shall be entered the *names* of the persons assessed, the value of the property, and the amount assessed to them respectively, and in case any lots or parts of lots shall be unoccupied belonging to any person residing in the city of Rochester, such person shall be assessed for the same and his *name* be entered accordingly; "and in case such lots or parts of lots belong to a non-resident or owner unknown, the same shall be entered accordingly with such a description of the lots as is required by law in assessment rolls made by town assessors, with the value thereof and the amount assessed thereon."

The statute (1 R. S., 391, § 12) requires that in the town assessment rolls, if the land of non-residents be a tract which is so subdivided into lots, or be a part of a tract which is so subdivided, the assessors shall proceed as follows:

1. They shall designate it (the tract) by name, if known

by one, or if it be not distinguished by name, or the name be unknown, they shall state by what other land it is bounded.

2. If they can obtain information of the subdivisions, they ✻ shall set down in the assessment rolls, and in the first column, all the unoccupied lots in their town or ward, owned by non-residents, by their numbers alone and without the names of their owners, &c.

3. In a second column and opposite to the number of each lot, they shall set down the quantity of land therein liable to taxation.

4. In a third column and opposite to the quantity, they shall set down the valuation.

5. If such quantity be a full lot, it shall be designated by the number alone; if it be a part of a lot, the part must be designated by boundaries or in some other way, by which it may be known.

By § 13, if the land so to be assessed be a tract which is not subdivided, or if its subdivision can not be ascertained by the assessors, they shall proceed as follows: they shall enter on their roll the name or boundaries thereof as above directed, and certify in the roll that such tract is not subdivided, or that they can not obtain correct information of such subdivisions, &c.

Now, according to the 34th section of the charter as before recited, if the lot was occupied at the time of the assessment, or if unoccupied and the owner resided in the city of Rochester, the name of the occupant or owner, as the case might be, should have been entered in the roll; but, if belonging to a non-resident or owners unknown, then it should have been entered accordingly with such a description as is required by the provisions of the revised statutes in like cases of town assessments; that is, instead of the name of the owner, if the lot be part of a tract distinguished by a name, the name of the tract shall be given; if not so distinguished or the name be unknown, then by designating the lands by which the tract is bounded.

This description of the tract is intended as a substitute for the name of the owner, the legislature presuming that

the owner either knew the name of the tract to which his parcel belonged, or of some of the tracts that bounded it, and therefore requiring one or the other description to be entered on the roll in the case of non-residents.

In the case before us, the name of the owner is not entered at all upon the assessment roll; hence it is impossible to uphold the tax as assessed against an occupant or resident of the city; nor is there any entry of the name or other description of the tract or parcel of which the lot in question is part; nor any indication that it is a non-resident lot, which latter designation would seem also to be required by § 34 of the charter of the city in connexion with the revised statutes, and hence the assessment is equally fatal, as made against a non-resident owner.

It was supposed on the argument, that the fifth subdivision of § 12 (1 R. S., 391) dispensed with the above particularity in the description in cases where the lot itself was known by a given number; but this is a clear misapprehension of the meaning of the clause. That relates simply to a description of the quantity of land assessed, providing that if such quantity be a full lot, the designation of the lot is sufficient; otherwise, the quantity must be designated by boundaries or in some other way by which it may be known.

It is impossible to believe the legislature could suppose that the number of a lot alone, without some designation or description of the tract to which it belonged, would afford full information to the unknown owner of the assessment, when they must have known that the same numbers are common to most of the different tracts subdivided in the several towns or wards in the state. This remark is equally applicable to the second subdivision, which requires the number of the lot to be given; this is an additional description to that provided for in the first.

The assessment of the tax, therefore, I am satisfied, is clearly defective. It follows also from the above view, that the description of the parcel in the notice of sale was insufficient as that should be, substantially at least, as full and definite as the one required to be given in the assessment

roll, so as to enable the owner to recognize it at once from perusal of the advertisement.

The publication of the notice once a week for the six successive weeks was all that is required by the statute. (Session Laws of 1834, p. 307, § 14.)

Where certain proceedings are authorized by statute, in derogation of the common law, by which the title to real property is taken from the owner and transfered to another, every requisite of the act having the semblance of benefit to the former must be strictly complied with. All these tax sales of real estate stand upon the footing of the execution of a naked power, and the proceedings preliminary to the consummation of the sale and transfer of title are to be judged of accordingly. The principle has been so frequently established by judicial determination, it is unnecessary to do more than refer to the cases: (6 Wheat., 119; 4 ib., 77; 7 Cow., 88; 7 Wend., 148; 20 ib., 249; 1 Hill, 130.)

It has been urged, that the objection taken on the trial to the defect in the proceedings relied on, was not sufficiently specific to be available according to the practice of the court.

The objections, as taken, were that the lot was not legally assessed for the tax, that the proceedings to authorize the sale were not in conformity with the statute according to the evidence as it stood, and therefore the lease under which the plaintiff claimed not warranted, and void.

The judge decided that the tax was legally imposed, that the proceedings were regular, and directed the jury to find for the plaintiff. The error I think was sufficiently raised, and affirmed by the court, to enable the defendant to avail himself of it.

New trial granted, costs abide event.