*NEW-YORK,*
*May, 1829.*

Jackson
v.
Oltz.

---

### JACKSON, ex dem. J. & D. GEE, *vs.* OLTZ.

THIS was an action of ejectment, tried at the Cortland circuit, in January, 1828, before the Hon. SAMUEL NELSON, one of the circuit judges.

Letters patent were produced to J. Gee, one of the lessors of the plaintiff, for lot No. 21, Virgil, bearing date 8th July, 1790, granted under and in pursuance of the act of the legislature of this state, to carry into effect the concurrent resolutions of the legislature for granting certain lands promised to be given as bounty lands, passed April 6, 1790; and the defendant was admitted to be in possession of 50 acres of the said lot, commonly called the *survey fifty acres.*

The defendant produced a deed of the premises in question from Simeon De Witt, surveyor general of the state of New-York, to Robert Dill, bearing date 21st July, 1792. This deed recites that the conveyance was made by virtue of the power and authority conferred on the grantor by the act above referred to, passed 6th April, 1790, and by another act passed 22d March, 1791; he having, for the non-payment of the sum of forty eight shillings as a compensation for his services and expenses as surveyor general, in marking, numbering and surveying lot No. 21, Virgil, exposed to sale fifty acres of the lot at public vendue, *after giving notice thereof as by the act is required,* and struck off the same to the grantee. The defendant then shewed himself in possession under the title thus conveyed to Dill. The judge ruled that the defence set up was insufficient to bar the plaintiff's right of recovery; to which the defendant excepted. The jury

*The sale of the survey fifty acres by the surveyor general in the lots in the military tract, under a six weeks notice, commenced previous to the expiration of the time limited for the payment of the expense of survey, was good and valid.*

found a verdict for the plaintiff, which was now moved to be set aside.

*J. Edwards,* for defendant, relied on the provisions of the two statutes under which the sale of the surveyor general had been had, and the conveyance executed to Robert Dill. (*Statutes, Greenleaf's ed. vol.* 2, *p.* 333, § 4, *passed 6th April,* 1790, and 2 *id. p.* 369, §. 6, *passed 22d March,* 1791.)

*J. A. Spencer,* for plaintiff. The issuing of the letters patent on the 8th July, 1790, is conclusive evidence that the expenses of the survey had been paid by the patentee, if any had occurred ; and if they subsequently occurred, they could not be charged on the land which had been granted without condition or reservation. The rights of the soldiers were vested under previous resolutions of the legislature. The act of 1790 only located the premises, and cannot be considered as part of the contract, subject to the provisions of which the soldiers must be considered to have taken. If the grant was improvidently made, it could only be avoided by *scire facias,* &c. (10 *Johns. R.* 23.)

By the act of 1790, the surveyor general was not authorized to sell the *survey fifty acres,* unless the expense of survey remained unpaid for two years after the issuing of the respective patents, and then he was required to give six weeks notice. By the act of 1791, he was authorized to sell the *survey fifty acres* in every lot on which the expense remained unpaid after the 1st July, 1792. Thus, though he was authorized to sell at an earlier day, he was not discharged from giving *six weeks notice ;* and yet, in 21 days after the limitation for the payment, the land in this case was sold. A notice commenced previous to the default, was improper. Besides, the act of 1792 was inoperative and void, being subsequent to the act of 1790, under which the rights of the soldier had attached.

*Edwards,* in reply. The act of 1790, under which the rights of the soldier attached, expressly provided that the expense of survey should be a charge upon each lot. It was, therefore, a part of the contract, and whatever rights he ac-

quired under that act were subject to the charges imposed by
it. In the deed of the surveyor general, a public officer, it
is alleged that notice of sale was given as by the act is requi-
red ; and, although the sale was in 21 days after the limita-
tion of the time of payment, *non constat* that six weeks notice
was not given. The notice probably commenced previous
to 1st July, 1792, and such notice complied with the requi-
sitions of the statute.

*By the Court,* MARCY, J. The act of the legislature,
(*sess.* 13, *ch.* 59, 1790,) by virtue of which the patent was
issued, directed the surveyor general to survey the lands
which had been promised as bounty to the soldiers in the line
of this state into lots, and fifty acres in one of the corners of
each lot was declared to be subject to the payment of forty
eight shillings, as a compensation to the surveyor general for
his services and expenses in marking, numbering and sur-
veying each lot. It was further provided in that act, that if
the said sum of forty eight shillings should remain unpaid for
the term of two years next after issuing the patents, the sur-
veyor general should sell the fifty acres at public vendue, af-
ter giving six weeks notice, and apply the money arising from
such sales to pay the expenses of the surveys.

In 1791, the legislature made a further regulation relative
to the sale of the fifty acres in each lot, subject to the expen-
ses for the survey. (*Sess.* 14, *ch.* 42, 1791.) The fifty
acres were, by the last act, directed to be sold out of one of
the corners of each lot on which the forty eight shillings
should remain unpaid after the 1st July, 1792.

It appears from the recital in the surveyor general's deed,
that he sold and conveyed, on the 21st day of July, 1792, to
Robert Dill the premises in question as the *survey fifty* of lot
No 21, in Virgil, for the non-payment of the forty eight shil-
lings, the expense of survey, after giving notice according to
the requirement of the first mentioned act.

It is true that the patent under which the plaintiff derived
title to the premises in question, and which bears date the 8th
July, 1790, was for the entire lot; yet, to ascertain its effect,
we must look to the act by virtue of which it was issued. By

the fourth section of that act, fifty acres in one of the corners of each lot is declared to be subject to a charge for the expenses of survey, and provision is made for the sale of these fifty acres, in case the expenses are not paid. The soldier, therefore, took the whole lot under the patent, with fifty acres in one of its corners, subject to a defeasance. The act directed the surveyor general to sell, after six weeks notice, if the expenses should remain unpaid for two years after issuing the patent. It is contended, on the part of the plaintiff, that the patentee had two years, by the terms of the contract, implied in the law, for the payment of the charge on the lot, and that it was not competent for the legislature to authorize, at the succeeding session, a change in the time and manner of the sale, so as to require the patentee to discharge this encumbrance at an earlier period than was fixed by the law directing the issuing of the patent. I am inclined to regard the time and manner of selling the fifty acres encumbered with the expenses of the survey as a matter of mere regulation, within the control and direction of the legislature, and not a constituent part of the agreement between the state and the soldier; but on this point it is not necessary to give a decided opinion.

The act of the 22d March, 1791, directed the surveyor general to sell, after the 1st day of July, 1792, the fifty acres in each lot, in case the forty eight shillings should remain unpaid. The objection to the regularity of the sale of the premises is precisely the same, whether he proceeded under the first or second act. The patent to John Gee, the soldier, was issued the 8th of July, 1790, and the surveyor general's sale of the premises was the 21st of July, 1792. Whether he sold under the one act or the other, he did not sell until the time had elapsed when he was at liberty to sell; but it is said a sufficient period had not elapsed after that time to allow him to give the six weeks notice required expressly by the act of 1790, and impliedly by that of 1791. It is insisted that before notice could be given, there must have been a default in the payment, and the date of the deed of the surveyor general shews that six weeks notice could not

have been given, and therefore the sale is void, because the law was not strictly complied with.

The deed executed by the surveyor general recites that notice was given pursuant to the act of 1790. It was not, I apprehend, necessary that the surveyor general should wait till the day on which he was permitted to sell before he published the notice. He was authorized to sell at any time after two years from the day of issuing the patent by the first act, and after the first day of July, 1792, by the second act, giving six weeks notice. A notice commencing previous to the time when he was permitted to sell, would satisfy the requirement of the law. The language of the act does not require that the first publication of the notice should be subsequent to the default in the payment. We are therefore disposed to uphold the construction which was given to the act by a public functionary of the state nearly forty years ago, and upon which the title to a large amount of real estate must now depend. Nothing but this objection to the sufficiency of the notice is shewn to impeach the sale by the surveyor general, and that being considered unfounded, the sale and conveyance of the surveyor general must be adjudged valid, and such sale operated as a defeasance to the patent to Gee, so far as it related to the premises for which this action was brought.

New trial granted.