HILL & BALLOU *v.* DRAPER and others.

In the year 1782 an act was passed by the legislature for carrying into effect the acts of congress, giving a bounty in land to the officers and soldiers of the New-York line; and devoting a certain tract of land to that object. In 1788 the legislature imposed on the patentees of the lots in this tract the duty of having the same surveyed by the surveyor general, at their own expense. By the act of April 6, 1790, it was made the duty of the surveyor general to cause each township to be surveyed into lots containing 600 acres each, and fifty acres were directed to be surveyed out in one of the corners of each lot, and the same were subjected to the payment of 48 shillings, as a compensation for the surveyor's services. And if the said forty-eight shillings should remain unpaid for two years, then it was made the duty of the surveyor general to sell such fifty acres at public vendue, after a six weeks' notice thereof, published in one of the newspapers of the state. And the act declared that as a consequence of such sale, the purchaser should be vested with the fee of such lands by a deed from the surveyor general. In an action in the nature of an ejectment, brought by persons claiming under a deed executed by the surveyor general, upon a sale made by him in pursuance of the above statutes; *Held* that it was necessary for the plaintiffs to prove that the surveyor general, previous to selling the land, gave six weeks' notice of the sale, by a publication in a newspaper; and that without such proof the action could not be maintained. GRIDLEY, P. J. dissented.

*Held also,* that the fact of such notice having been given, could not be established by the recitals in the surveyor general's deed; and that it could not be *presumed,* on the ground that it was the official duty of the surveyor general, as a public officer, to give such notice, and that an omission to do so, and a sale by him without notice, would be a great dereliction of duty.

And where a patent was issued by the state, to a soldier, for a lot of 600 acres, in pursuance of the statutes above mentioned, *Held* that the patentee took the whole lot, subject to the lien and charge upon the fifty acres, for the benefit of the surveyor general; but that such lien could be enforced, and the title of the patentee defeated, only in the manner prescribed by the statute.

*Held further,* that the imposition of the charge upon the fifty acres, and a conveyance by the state subject thereto, in effect gave the state, or the surveyor general, a mortgage for the sum charged; the effect of the transaction being precisely what it would have been, had the grantee executed a mortgage for that sum, authorizing a sale in the manner prescribed by the statute.

A recital in a deed is only evidence of the recited facts against parties and privies in blood, in estate and in law. It is not evidence against strangers, nor against one claiming under the party executing the reciting deed, by title prior thereto, or adversely to him, but only against those claiming under him by title subsequent.

The presumption that public officers have done their duty, can not be indulged to the extent of making it available to work a forfeiture of property, or a transfer of the title from one individual to another, without entirely disregarding principles which have been considered as well settled, and which have controlled the decisions of courts. *Per* ALLEN, J.

In the sale of the property of individuals by an officer, under a statutory or other special power, there is no jurisdiction of the persons and subject matter, in the sense in which that term is used in reference to judicial proceedings. It is more analogous to a proceeding in rem, but it has none of the characteristics of a judicial proceeding. The jurisdiction or power of the officer to sell, only vests when he has complied with all the pre-requisites to the sale. The power to sell depends, for its existence, upon such compliance, and not upon the existence of a state of facts which authorize him to take the preliminary steps in the proceeding to sell. *Per* ALLEN, J.

In an action of ejectment, defendants who are in possession of the premises in question will be presumed to have a valid title thereto; and the plaintiffs, to entitle themselves to recover, must overcome that presumption, by proving title out of the defendants, and in themselves. They must recover, if at all, on the strength of their own title, and not on the defects in that of the defendant.

The possession of real estate is *prima facie* evidence of the highest estate in the property, to wit, a seisin in-fee.

THIS was an action to recover the possession of the survey fifty acres in the northeast corner of lot No. 5 in the old township of Lysander, Oswego county. On the trial, the plaintiff gave in evidence a deed of indenture, bearing date on the 16th

day of July, 1792, executed between Simeon De Witt, surveyor general of the state of New-York, of the first part, and Abraham Hardenburgh, of the second part, reciting a sale to said Hardenburgh of the premises in question, after giving such notice of the sale as was required by the act under which the sale was made, and conveying by apt words the premises, by virtue of the powers vested in the grantor, by the acts of April 6th, 1790, and of the 22d of March, 1791. A regular deduction of title was proved from Hardenburgh to the plaintiffs. After the plaintiffs had proved the defendants in possession, they rested their cause. The defendants' counsel then moved for a nonsuit on these grounds. 1st. That it was not proved that the premises had ever been patented by the state. 2d. That it was not proved that the six weeks' notice of sale had been given by the surveyor general, pursuant to the act under which the sale was made. 3d. That the proof showed the title was in Ballou, if in either of the plaintiffs, and not in Hill. The counsel for the plaintiffs insisted that the proof was prima facie sufficient to sustain the action. That it showed title from the state to the plaintiffs. That the plaintiffs were not required to show that the surveyor general published notice of the sale ; that if such notice was necessary it should be presumed it had been properly given. That at least, as between the state and those claiming under the deed of the surveyor general, it was not necessary to prove that the notice of the sale had been given by the surveyor general. But his honor the judge ruled and decided that the plaintiffs were bound to prove that the surveyor general gave the six weeks' notice of the sale of the land, pursuant to the law authorizing him to sell, to render the sale and deed by him valid ; that for the want of this proof the plaintiffs could not maintain the action, and therefore he nonsuited the plaintiffs.

The plaintiffs excepted ; and from the judgment entered at the circuit they appealed to the general term.

*J. A. Spencer,* for the appellants. I. The plaintiffs proved a perfect chain of title to the premises in question, from Abraham Hardenburgh, the grantee in the surveyor general's deed to

Hill *v.* Draper.

themselves. The only question made, is whether title passed from the state to Hardenburgh, on the 16th of July, 1792. II. The surveyor general was authorized to sell and convey the premises, whether a patent had issued for lot No. five or not. The act of the 6th of April, 1790, subjected these fifty acres, then owned by the state, to the payment of forty-eight shillings to the surveyor general, absolutely. If this remained unpaid, for the term of two years after the issuing of the patent for the lot, then the surveyor general could sell. (2 *Greenl. Laws*, 332, § 4.) The act of the 22d of March, 1791, authorized the surveyor general to sell, if the said amount was not paid by the first day of July, 1792, notwithstanding any thing contained in the former act to the contrary. (2 *Greenl. Laws*, 368, § 6.) It was, therefore, in no respect necessary, that the plaintiffs should prove that the patent had been issued for the lot. (2 *Wend.* 537.) III. The plaintiffs were not required to prove that the surveyor general published a notice of the sale. He, in making it, was acting as the agent of the state, enforcing a lien created by it upon its own property for its own benefit. This is not a case in which the state or its agent was proceeding in derogation of the common law to divest a citizen of his property. It is the case of the state, selling its own property, by its own duly constituted agent, and the sole question is—Did title pass to its vendee? In such a case, the law presumes that a public officer did his duty ; that the prerequisites prescribed by law to granting land by deed or patent, were complied with. The deed and its recitals are certainly *prima facie* evidence that the surveyor general did his duty, and gave the proper notice. (19 *John.* 345, 347. 12 *Wheaton*, 64, 69, 70. 1 *J. J. Marsh.* 447, 450, 451. 3 *Monroe*, 211. 3 *Gill & John.* 359. 1 *Cowen & Hill's Notes*, 296, 297, *and cases there cited.*) IV. Concede that the surveyor general sold without giving notice as directed, and the purchaser paid his money to the state and took the deed—we submit that he took good title, certainly as against the state. (1.) Because the act of the legislature makes *the deed*, not the sale, of the surveyor general, vest the title in the purchaser. (2.) Because the state having clothed

Hill v. Draper.

its agent with power to sell, and having received the proceeds of the sale, is estopped from alledging that the sale is void because the agent did not, in all respects, comply with its directions, as to the manner of making the sale. V. The law made no provision for preserving the evidence of the manner of the sale. Its language seems to import that the deed alone should vest and be sufficient evidence of title in the purchaser. To require any thing more, would be equivalent to invalidating all these sales by the surveyor general.

*R. H. Tyler*, for the respondents. The ruling of the judge at the circuit was right, and the plaintiffs were properly nonsuited. The object of surveyor general's sale was to divest the soldier of his title, acquired under the laws and resolutions of the legislature, and consequently the statute authority to sell, should be proved to have been strictly complied with. The recital in the surveyor general's deed, that notice of sale had been given, is no evidence, and such was not pretended on the trial; and the fact of the six weeks' notice should have been proved. (*Varick et al.* v. *Tallman*, 2 *Barb. S. C. Rep.* 113, *and the authorities therein cited. Jackson* v. *Oltz*, 2 *Wend. R.* 537, *and the laws therein cited.*) The nonsuit as to the plaintiff Hill, was properly granted, if not as to both plaintiffs, and should be affirmed by the court. (*Code of Procedure*, § 330.)

ALLEN, J. The defendants in possession of the disputed premises, are presumed to have a valid title thereto, and the plaintiffs, to entitle themselves to recover, must overcome that presumption by proving title out of the defendants, and in themselves. They must recover, if at all, on the strength of their own title, and not on the defects in that of their adversary. (*Roe* v. *Harvey*, 4 *Binney*, 2487. 1 *Ch. Pl.* 189. *Smith* v. *Lorillard*, 10 *John.* 339. *People* v. *Leonard*, 11 *Id.* 504. *Best on Presumptions*, 87. *Cowen & Hill's Notes*, 295, 353, 354.) The possession of real estate is *prima facie* evidence of the highest estate in the property, to wit, a seisin in fee. (*Jayne* v. *Price*, 5 *Taunt.* 326) The presumption therefore,

Hill *v.* Draper.

is that the defendants are in possession under the title derived from the state, through the soldier to whom the lot was awarded in pursuance of the laws of the state ; that being the only way in which such seisin could be acquired. There is no direct evidence that a patent was in fact issued by the state, and delivered to the soldier or other person entitled, but it is admitted that the premises in question are a part of the tract of land set apart by the state, and known as military bounty land, and constitute that part of lot number five, in the military township of Lysander, commonly known as the survey fifty acres, being fifty acres set apart in one corner of the lot, and charged with the payment of forty-eight shillings for the expenses of the survey. The title sought to be established by the plaintiff is based upon the theory, which is doubtless true in fact, that a patent had issued for the lot before the sale of the surveyor general, under which they claim title. It is not claimed that if the title was in the state at the time of the pretended sale, the surveyor general had any authority to sell any part of it. He had no such power in respect to the land of the state. The charge upon the lot, for which the fifty acres were sold as is alledged, was for the expense of subdividing and marking the townships into lots, the better to enable the several persons entitled, to locate their respective rights. By law, the surveyor was first directed to lay out as many townships as would satisfy the claims of persons entitled to bounty, and to make a map of each township, dividing the same into one hundred lots. (2 *Greenl. Laws*, 281, §§ 1, 2.) The commissioners of the land office were then directed, after determining the claims of persons entitled, and which were to be presented by the first of July, 1790, to assign the lands by ballot to the several persons entitled to the same, and *immediately thereafter* to issue the patents. (2 *Greenl. Laws*, 282, §§ 3 *and seq. Id.* 332, § 1.) And it was made the duty of the commissioners, after completing the balloting, to direct the surveyor general to survey the outlines of the townships at the expense of the state. (2 *Greenl. Laws*, 284, § 7. *Laws of* 1789, *ch.* 44.) By the act of April 6, 1790, (2 *Greenl. Laws*, 332, § 3,) it was made the duty of the surveyor general to cause each of

said townships to be subdivided into lots of six hundred acres each, and by sec. 4 the expenses of this survey, to the amount of forty-eight shillings, were charged upon fifty acres in one corner of each lot, known since as the survey fifty acres; and the surveyor general was authorized in case such sum should remain unpaid for two years *after the issuing of the patents*, to sell the same at public vendue after giving six weeks' notice. By the act of March 22, 1791, (2 *Greenl. Laws*, 369, § 6,) the sale was authorized to be made in case the sum thus charged remained unpaid on the first of July, 1792.

The plaintiffs claim title in virtue of a sale, by the surveyor general, under the acts referred to, to pay this forty-eight shillings. The soldier under whom the defendants must be presumed to hold, took the whole lot, including the fifty acres, subject to the defeasance in respect to this fifty acres. (*Per Marcy, J. Jackson* v. *Oltz*, 2 *Wend.* 540.) His title could only be defeated by proceedings under and in pursuance of the statute, and the only material question is, whether the plaintiffs have shown the title thus defeated.

The surveyor general was only authorized to sell upon a notice of six weeks. This notice was required for the benefit of the parties interested, and was designed to protect their rights; and a sale without such notice would have been clearly void. It is not disputed that every requirement of the statute affecting the substantial rights of the parties, must be complied with, in order to divest the title to property, and transfer it from one party to another under a statutory authority. (*Denning* v. *Smith*, 3 *John. Ch.* 332, 344. *Stead* v. *Course*, 4 *Cranch*, 403.)

Upon the trial no evidence was given, or offered, that the notice of the time and place of sale of the premises in question had been given, as required by the statute. It was and still is claimed on behalf of the plaintiffs, that if such notice was not given, it devolved upon the defendants, in the defense of their possession, to show it; that is, that it devolved upon a party in possession, and being *prima facie*, the owner, to establish the fact, when called upon in an action of ejectment, that his title has not been divested in any one of the many ways in which he

Hill *v.* Draper.

might have lost it; that in favor of a party out of possession, and seeking to obtain it, everything will be presumed, at the expense of the *prima facie* owner in actual possession. The only reason urged for this rule, so different from the ordinary rules by which courts of justice have been governed in passing upon adverse claims to property, is that the plaintiffs and those under whom they claim, have made no entry or claim under their deed from the time it was given in 1792, nearly sixty years, and by reason of the lapse of time, have not now the means of showing affirmatively that the statutory requirements were complied with. And to obviate this alledged hardship, they merely ask the party in the peaceable possession to relieve them of this burthen by proving a negative, a thing difficult at all times, and which is not rendered less difficult by this lapse of time which, it is claimed, presses so hard upon the plaintiffs, with whom is the affirmative upon this question. It is claimed also that by the surveyor general's deed, and by the recitals in that deed, the fact that the requisite notice of sale was given, is *prima facie* established. And, secondly, if the recitals in the deed are not evidence of the fact, it should be presumed, inasmuch as it was the official duty of the surveyor general, a public officer, to give such notice, and an omission to do so, and a sale by him without the notice, would have been a gross dereliction from duty. These grounds will be briefly examined, but first I will refer to *Jackson* v. *Oltz*, (2 *Wend.* 537,) which was cited and relied upon by the plaintiff's counsel, as an authority entitling him to recover in this action, upon the evidence adduced. In that case the defendant was in possession, claiming title under a surveyor general's deed, and the only question made upon the trial, or upon the argument, was, whether the six weeks' notice could be given, and commence running before the time at which the premises could by law be sold, and the court held that it could. The question now made, was not made or considered in that case, and the case is no more authority upon the point now before us than any other reported case in which no allusion is made to it, or to any principle bearing upon it. Judge Marcy says, " The deed executed by the surveyor general recites that notice was

given pursuant to the act of 1790 ;" but the effect of that recital as evidence of the fact is not considered or alluded to, and the reference to the recital is for another purpose.

I. In order to sustain the proposition that the recitals in the deed are evidence against the defendants, a privity of estate must be shown connecting them with the title under the deed. A recital does not bind strangers, or those who claim by title paramount. Neither does it bind persons claiming by an adverse title, or persons claiming from the parties by a title anterior to the date of the reciting deed. (*Per Story, J., Cairn* v. *Jackson,* 4 *Peters,* 183. *Crane* v. *Lessees of Morris,* 6 *Id.* 611.) In the case before us there is no evidence that the defendants are in any way connected with, or take under, or in subordination to, the surveyor general's deed, or under a grant from the state subsequent to that deed. On the contrary, their claim is by title paramount, to wit, from the state to the soldier. (*Penrose* v. *Griffith,* 4 *Binn.* 231. *Greenl. Ev.* §§ 23, 24, 25, 189, 211.) The recital in a deed is only evidence of the recited facts against parties and privies in blood, in estate and in law. It is not evidence against strangers, nor against one claiming under the party executing the reciting deed, by title prior thereto or adversely to him, but only against those claiming under him by title subsequent. Hence, recitals of certain mesne conveyances, contained in a patent from the commonwealth to A. were held not evidence of those conveyances, against B. who claimed under a warrant from the commonwealth prior to the patent. (*Penrose* v. *Griffith, supra. Cowen & Hill's Notes,* 1235, *note* 869, *and cases cited.*) In *Sharp* v. *Spier,* (4 *Hill,* 76,) which was an action of ejectment in which the defendant claimed under a sale by the city of Brooklyn, in pursuance of a power conferred upon that city to sell lands for taxes unpaid thereon, it was held that the recitals in the deed of conveyance by the public officers, upon a tax sale, were no evidence of the recited facts. Bronson, J. says, " The recitals in the conveyance are not evidence against the owners of the property, but the fact recited must be established by proofs *aliunde ;*" and this was said of a deed under which a party in possession sought to de-

fend his possession, and not in relation to a deed sixty years old, and under which no entry or claim had been made. This remark is quoted and approved by Gridley, J. in *Varick* v. *Tallman,* (2 *Barb. Sup. C. Rep.* 115,) and applied to the recitals in a deed from the comptroller upon a tax sale by the state. The same question was raised in *Williams* v. *Peyton's Lessee,* (4 *Wheat.* 77,) and it was held in that case that the recitals in the marshal's deed were not *prima facie* evidence of the recited facts, and that proof of every requisite step must be shown independently of the recitals in the deed of conveyance. This case and its principles were affirmed in 7 *Cowen,* 88, and in the opinion of Gridley, J. before referred to. The title to the entire lot, passed from the state to the patentee, subject only to a defeasance in the nature of a lien or charge upon the fifty acres in dispute, of forty-eight shillings, for the benefit of the surveyor general, to be enforced in the manner prescribed. The surveyor general's claim was in the nature of a mortgage, with a special power to sell the mortgaged premises, upon taking certain preliminary steps; and I have no hesitation in holding that the recital in his deed is not *prima facie* evidence of these preliminary proceedings, but that they should be proved *aliunde.*

The recitals in a deed given by the attorney general upon the foreclosure of a mortgage to the state, and the sale of the mortgaged premises would not be evidence against the owner of the premises, of the truth of the recitals, and why should the recitals in this deed? If this position in relation to the recitals in the deed of the surveyor general can be sustained, it must be upon the ground of the presumption, which is claimed to attach to his acts as a public officer, and this brings me to an examination of the point made upon this branch of the case, by the plaintiffs' counsel, which is in the following words:

'II. The plaintiffs were not required to prove that the surveyor general published a notice of the sale. He, in making it, was acting as the agent of the state, enforcing a lien created by it upon its own property for its own benefit. This is not a case in which the state, or its agent, was proceeding in derogation of the common law to divest a citizen of his property. It is the

case of the state selling its own property by its own duly con-
stituted agent, and the sole question is, did title pass to its
vendee? In such a case the law presumes that a public officer
did his duty, that the pre-requisites prescribed by law, to
granting land by deed or patent, were complied with. The
deed and its recitals are certainly *prima facie* evidence that
the surveyor general did his duty and gave the proper notice."
I have stated the plaintiff's proposition in his own words, that
it may be the more readily examined. It will be seen that he
does not claim that any presumption attaches in favor of the
regularity of the acts of a public officer, by which a forfeiture
or loss of property is to ensue to an individual. This was not,
however, the limit of the claim upon the argument, but in the
printed points this presumption is urged, for the reason that the
surveyor general was acting as the agent of the state in the dis-
posal of the property of the state. He assumes that the title of
this fifty acres has never passed from the state. It is true he
speaks of enforcing a lien of the state, "created by it upon its
own property for its own benefit." I do not perceive how this
could well be, or why, if the state owned the fifty acres, it
should create a lien upon it for the payment to themselves of
forty-eight shillings. But this is not material. The whole
proposition is based upon the assumption that the state was the
owner of the fifty acres, and sold it by its agent, for its own
benefit. If this is so, I am not prepared to say that a third
person can insist upon the want of a notice of the sale, which in
that case, would only be for the benefit of the state. The facts,
however, do not support the theory. The title did pass to the
patentee, subject only to this lien and charge for the benefit of
the surveyor general, and not for the benefit of the state, and
this lien could only be enforced in the manner prescribed by the
instrument by which it was created.

The imposition of this charge, and the conveyance by the
state subject thereto, in effect gave the state or the surveyor
general a mortgage for the sum charged, and the effect of the
transaction is precisely what it would have been had the grantee
executed a mortgage for that sum, authorizing a sale in the man-

---

---

ner prescribed by the statute.    An examination of the statutes before mentioned, and a reference to *Jackson* v. *Oltz*, demonstrates the correctness of this position.    Without remarking further upon the form of the proposition advanced by the plaintiff's counsel, I will proceed to consider the ground actually taken upon the argument, and will refer to the authorities cited in its support.    It was urged that when an act was required to be done by one, the omission of which would make him guilty of a criminal neglect of duty, the law presumes the affirmative, and throws the burthen of proving the negative on the party who insists upon it, and that it would have been a criminal neglect of duty on the part of the surveyor general to have sold without notice, and therefore the notice will be presumed.    My impression is that an omission of the officer to give the notice would not have been a criminal neglect of duty, within the principle referred to, and would not have subjected him to any penalty.    The counsel cited to this proposition, 19 *John.* 345-7. 12 *Wheat.* 64-69, 70.    1 *J. J. Marshall*, 447, 450, 1.    3 *Minor*, 211.    3 *Gill & John.* 359, *and cases cited in Cowen & Hill's Notes*, 296, 7.

The case of *Hartwell* v. *Root*, (19 *John.* 345,) was an action against a deputy sheriff for taking and carrying away certain property, and the court held that under the circumstances of that case they would presume a levy by virtue of an execution during its life, under which the defendant took and sold the property; the defendant in the execution having no other property liable to execution.    The case cited from 12 *Wheat.* 64, was an action by the United States Bank upon a bond given for the faithful performance of the official duties of one of its cashiers, and the question was upon the presumption of the acceptance of the bond by the directors, in the absence of any record of such act by them.    *Wallace* v. *Maxwell*, (1 *J. J. Marshall*, 147,) was an action of ejectment involving a question of boundaries.    No question was made upon the validity of acts of public officers. The court say, incidentally, in reference to the government surveys of the two tracts of land, both parties claiming under the state by grant; "it is admitted that the legal presumption is,

that the surveyor, register, governor, and secretary of state have done their duty in regard to the several acts necessary to be performed by them in granting lands, and therefore, surveys and patents should always be received as *prima facie* evidence of correctness ;" and they add, " but further we can not go." The court were speaking of the acts of the public agents in respect to the public property.

Judge Gridley, in *Varick* v. *Tallman*, disposes of this case, and shows its inapplicability to a case like the present, and says the court were speaking of the acts of the agents of the government, and the remarks did not apply " to a proceeding wherein the government was acting by its agents in hostility to, and with the view of subverting the title of an individual who had by independent evidence established a legal title in himself." *Hickman* v. *Skinner*, (3 *Monroe*, 211,) fully sustains the position taken in behalf of the plaintiffs. In that case the question was upon the validity of a title derived under a sale for taxes, and the court say, " From the fact of his, (the register,) having conveyed, therefore, we must presume, *prima facie*, that every thing was done by the register which was incumbent upon him to do; and were his deed to state that those things had been done, the legal effect of the statement would be no more." To this proposition no authorities are cited, or arguments adduced, and it is directly in conflict with the decisions of the United States' courts and the courts of other states, and is so conceded by the same court in *Terry* v. *Bright*, same volume, page 270, where they follow the decision of the supreme court of the United States in passing upon a title under a marshal's sale for a United States tax, because the decision of that court in such a case was binding upon them, at the same time saying their decision of a like question under the state laws would be different. *Harrison* v. *Barnes*, (3 *Gill & John.* 359,) is simply to the effect that a party in making title under a sheriff's sale upon an execution, need not prove that notice of such sale has been given by the sheriff. The cases cited in Cowen & Hill's Notes, at the pages referred to, add nothing to those selected from them, and particularly referred to by the counsel, the prin-

ciples decided in which I have briefly stated, and it will be seen that with the exception of the case from 3 Monroe, they come far short of sustaining the doctrine contended for. And a cursory examination of cases in which the principle was directly involved or so connected with the questions decided that it was necessarily considered and passed upon, will demonstrate that the presumption claimed in favor of the acts of public officers can not be indulged to the extent of making it available to work a forfeiture of property, or a transfer of the title from one individual to another, without entirely disregarding principles which have been considered as well settled, and which have controlled the decisions of court.

The maxim, *Omnia presumunter rite et solemniter esse acta,* has been applied to acts of a judicial and official character when necessary to sustain the judgments of courts, and protect officers from penalties and forfeitures, and in like cases it has been applied to acts of individuals, and especially in cases in which the officer or individual was prosecuted for omission of duty. In these cases it has been held that some evidence of neglect of duty must be given. (*Williams* v. *East India Company,* 3 *East,* 192. *King* v. *Hawkins,* 10 *Id.* 211.) Best, in his treatise on presumption of law and fact, has in a concise and orderly manner considered this maxim in connection with the decisions and principles upon which it is based, and neither in his treatise, nor in any case cited or referred to by him, do I find that it has been applied in a case like the present, and the presumption in favor of the performance of duty, he says, is only entertained when a breach of duty would be an actual violation of the law. (*Best on Presumption,* 65, 74, *et seq.*) The statutes of this state have regulated the proceedings of sheriffs in sales of real estate upon execution, and have imposed a heavy penalty for an omission to give the requisite notice, and have provided that an omission to give the notice shall not affect the sale, and that his certificate of sale shall be received as presumptive evidence of the facts therein contained. (2 *R. S.* 369, §§ 37, 40, 44.) So that the question made in this case is, by careful legislation, obviated in those cases.

Hill *v.* Draper.

On referring to the cases which will be cited, it will be observed that in some of them stress is laid upon the fact that possession has or has not been in accordance with the deed or act sought to be established, and presumptions have been entertained in favor of the deed or act, or not, as the possession has been consistent or inconsistent with such deed or act, and it may be remarked here, that in the case before us, the parties now claiming under the deed, offered no evidence of claim or entry under it. For sixty years, we are authorized to say, they have held their deed but made no claim under it. If, under such circumstances, we were at liberty to indulge presumptions, they would be unfavorable to the validity of the deed. In the *King* v. *Hastingfield*, (2 *M. & S.* 558) the court held that upon an indictment against the parish of H. for not repairing a highway, an award made by commissioners under an inclosure act which awarded the highway to be in a different parish, was not admissible evidence for the defendants, without showing that the commissioners had given the previous notice required by the act, before they ascertained the boundaries ; it appearing that the usage had not been pursuant to the award. The *King* v. *Cooke; (Cowp.* 26,) is a leading case upon this subject, and in that case the question arose upon certiorari, and the court held that when by statute a special authority was delegated to particular persons, respecting the property of individuals, it must be strictly pursued, and appear to be so upon the face of the proceedings, and quashed the order because its regularity did not appear. In *Hubley* v. *Keyser*, (2 *Penrose & Watts*, 496,) the supreme court of Pennsylvania, after holding that by the peculiar phraseology of the statute under which the deed then under consideration was given, the deed did confer a title without proof of any requisite except those named, say : "It must also be understood that by the uniform decision of the supreme court on former acts the sale was void, for any and every failure of proof that every step was precisely according to law : what was not proved to be strictly regular in every part was void." In *Waldron* v. *Tuttle*, (3 *N. H. Rep.* 340 ; 4 *Id.* 71,) the plaintiff in 1825 brought ejectment, claiming title under a deed upon a collector's sale for

taxes given in 1782, and among other things proved that imme-
diately after the sale he ran out the land, afterwards frequently
entered upon it for wood, and upon the trial the court instructed
the jury that it was competent for them to presume from the
length of time since the execution of the deed to the plaintiff,
and his occupancy of the lot, that all acts and proceedings had
been duly had and done which were necessary to give validity
to the deed, and the jury found a verdict for the plaintiff. A
new trial was granted by the court in banc, that court saying,
" He who rests his claim to land upon the legality of such a title
must show affirmatively that the law of the land has been sub-
stantially pursued in the sale."   *   *   " In all cases enough of
the proceedings should be shown to render it not improbable
that the proceedings may have been regular, and then long and
quiet possession may be left to a jury as evidence of particular
facts, the ordinary proof of which is not to be found."

The court of appeals of Virginia, in *Nalle's Representatives*
v. *Fenwick*, (4 *Rand*. 585,) decided that when a naked power is
given by law to an officer or other person, it must be strictly
pursued, especially if by such proceedings the estates or rights
of others may be forfeited or lost, and that it devolves on him
who claims a right under the exercise of such power to show
that it was in all respects exactly pursued, and that therefore,
when land was sold by a sheriff for non-payment of taxes it was
incumbent on the purchaser to show that all the steps had been
regularly taken which the law required in such cases. In that
case, one defect in the proof considered and urged by the court,
was that the four weeks' notice of sale required by law had not
been given.   (*See also Christy* v. *Minor*, 4 *Munf*. 431;
1 *Id*. 318.)

In *Gray* v. *Gardner*, (3 *Mass. Rep*. 399,) the court held that
after twenty years' acquiescence by the heirs of the intestate in
the possession of the real estate of their ancestor holden under a
sale by the administrator, they would submit to the jury whether
the administrator took the oath and posted notifications according
to law previous to the sale, evidence being given of the license
to sell, and the actual sale at auction; the court clearly resting

Hill *v.* Draper.

their decision upon the peculiar circumstances of the case, and charging the jury that taking the oath by the administrator and posting the notifications were facts to be proved, to render the deed valid, but that those facts might be proved by circumstances. The same principle was recognized in *Colman* v. *Anderson*, (10 *Mass. Rep.* 105,) in favor of a tenant in possession under a tax title, the demandant having been disseised many years, and the court in such a case held merely that the jury were properly instructed to consider every thing as proved which might be reasonably and fairly presumed from the facts and circumstances proved as to the regularity of tax bills, valuations, notifications, &c. There was partial proof of the publication of the notices required by law. (*See also Blossom* v. *Cannon*, 14 *Mass. Rep.* 177.) All the cases, thus far, proceed upon the ground that the party claiming under a title originating upon a sale under a special power, must show affirmatively that every proceeding under the power has been regular, and every requirement substantially complied with, and this whether the party is out of possession and seeking to obtain it, or is in possession and is insisting upon his title in defense of his possession. It has been insisted that a distinction exists between those acts which precede the vesting the power to sell and those which precede the sale itself; in analogy to the rule which is applicable to courts of special and limited jurisdiction, in relation to which, and in support of their judgments, the jurisdiction over the parties and over the subject matter being shown, the regularity of the proceedings will be presumed. But I have been unable to perceive the analogy. In the cases referred to, without any presumption, if the officer or court has jurisdiction, his proceedings are conclusive upon all parties until reversed by some proceeding taken for that purpose. In the sale, however, of the property of individuals by an officer under a statutory or other special power, there is no jurisdiction of the persons and subject matter in the sense in which that term is used in reference to judicial proceedings. It is more analogous to a proceeding in rem, but it has none of the characteristics of a judicial proceeding. The jurisdiction or power of the officer to sell only

Hill *v.* Draper.

vests when he has complied with all prerequisites to the sale. The power to sell depends for its existence upon such compliance and not upon the existence of a state of facts which authorize him to take the preliminary steps in the proceeding to sell. Hence, in all the cases, the power and authority is treated as a power to sell, and not as a power and jurisdiction over the subject matter, and to take the first or initiatory steps which necessarily precede the sale, and this power to sell is not perfect until the time of sale arrives and every thing has been done which by law is required to precede the sale. The surveyor general, in the sale now under consideration, might lawfully give notice of sale before the first of July, 1792, for a day subsequent to that time, but he had no authority to sell until after that day, nor then unless the previous notice had been given. The legislature of this state have made the deed of the comptroller upon a sale for taxes presumptive evidence of the regularity of all the proceedings, and that all the notices required by law have been given in certain cases, and have thus to some extent sanctioned the views which have been taken by courts of justice, that in the absence of any legislative provision to the contrary, actual proof must be made of the giving of all the notices required by law to be given. (*Laws of* 1850, *ch.* 183, § 2.)

A reference to some of the decisions of the supreme court of the United States, and of this state, will close my examination of this case.

In *Stead's Executor* v. *Course,* (4 *Cranch,* 403,) the court held that a vendee at a collector's sale for taxes must prove the au thority to sell, that the collector must act in conformity with the law, and the purchaser is bound to inquire whether he had so acted. Marshall, Ch. J. says, " It is true that full evidence of every minute circumstance ought not, especially at a distant day, to be required. From the establishment of some facts it is possible others may be presumed, and less than possitive testimony may establish facts." * * "But it is incumbent on the vendee to prove the authority to sell." In this case the vendee under the tax title was in possession. *Parker* v. *Rule,* (9 *Cranch,* 64,) was ejectment, brought against the tenant in pos-

session, claiming title under a tax sale by virtue of the act of Congress of 1798, imposing a direct tax. The defendant produced his deed from the collector and also the tax list, and the general list of lands in the district, showing the assesment of the tax upon the premises, and the advertisement of sale, but did not prove that the collector had caused a copy of the list of property with a statement of the amount of the tax, and a notification to pay the same to be published for sixty days, in four gazettes of the state, pursuant to the eleventh section of the act; and the circuit judge charged the jury that the sale was void, and the judgment was affirmed upon error brought. The case of *Williams* v. *Peyton's Lessee,* (4 *Wheaton,* 77,) is in all points like the present in principle, except that in that case the sale was for a tax imposed by an act of congress, and in the case before us the sale was for the payment of a charge imposed by the laws of the state, in the nature of a local assessment, and in the former case the party claiming title under the sale was in possession, and in our case he is seeking in virtue of his title to oust the legal owner. In *Williams* v. *Peyton,* the defendant proved that the tax upon the land in controversy had been charged to the plaintiff, and that the lands had been sold for the non-payment thereof, and gave in evidence the marshal's deed, and proved that the plaintiff did not pay the tax or redeem the land. There were tenants in possession, and the notice, the want of which was fatal in *Parker* v. *Rule,* was not necessary, but a notice of a sale was required by the act. The circuit judge instructed the jury " that the purchaser under the sale of lands for the non-payment of the direct tax, to make out title, must show that the collector had advertised the land and performed the other requisites of the law of congress in that case provided; otherwise he made no title;" and refused to instruct them that the deed and other evidence were prima facie evidence of these things, and charged them " that the deed and other evidence were not prima facie evidence that the said land had been advertised according to law, nor that the requisites of the law had been complied with." The jury found for the plaintiff, and upon error brought, the ruling of the judge was sustained and the

Hill *v.* Draper.

judgment affirmed.; Chief Justice Marshall delivered the opinion of the court, and his entire argument applies to the case now under consideration, and is conclusive upon every question made in this case.   The plaintiffs in this case proved no more than did the defendant in that, viz. that the property was liable to be sold by the surveyor general upon his complying with certain requisites named in the statute.

Judge Marshall, in his opinion, says of the authority of the collector, " It is a naked power not coupled with an interest, and in all such cases the law requires that every pre-requisite to the exercise of that power must precede its exercise ; that the agent must pursue the power, or his act will not be sustained by it." This is directly applicable to the exercise by the surveyor general of the power to sell for the non-payment of the forty-eight shillings.   Again, it was contended in that as in this case, that the deed executed by a public officer was *prima facie* evidence that every act which·ought to precede it, had preceded it.   Upon this Judge Marshall says, " It is a general proposition that the party who sets up a title must furnish the evidence necessary to support it.   If the validity of a deed depends on an act in pais, the party claiming. under that deed is as much bound to prove the performance of the act as he would be bound to prove any matter of record, on which its validity might depend.   It forms a part of his title ; it is a link in the chain which is essential to its continuity, and which it is incumbent on him to preserve.   These facts should be examined by him before he becomes a purchaser, and the evidence of them should be preserved as a necessary muniment of title ;" and then proceeds to apply the principle to the case, and after laying down the proposition in somewhat stronger and broader terms, that it is the duty of the purchaser at a sale, under a power, to look after and preserve the evidence that all notices had been given and other acts done which are required by the act conferring the power, adds, " But to require from the original proprietor proof that these acts were not performed by the collector, would be to impose on him a task always difficult and sometimes impossible to be per-formed."

---
Hill *v.* Draper.
---

The same principles are reiterated and confirmed in *Thatcher v. Powell*, (6 *Wheaton*, 129,) and again in *Brukendorff v. Taylor*, (4 *Peters*, 249,) in which McLean, justice, says, "No presumption can be raised in behalf of a collector who sells real estate for taxes, to cover any radical defect in his proceedings, and the proof of regularity in the procedure devolves upon the person who claims under the collector's sale." The question in the last case cited was upon the sufficiency of the proof of the notice of sale given by the collector. The cases in the supreme court of the United States have been followed uniformly by the courts of this state, and the principles thereof adopted in their fullest extent, and the language of the court has been in several cases, if not in most cases, quoted by the courts of our state, and always with approbation, and for the purpose of adopting it as expressive of the true rule of law applicable to cases coming within the principle decided.

The principle was recognized by the court of chancery in *Denning* v. *Smith*, (3 *John. Ch. Rep.* 332,) as applicable to a sale by loan commissioners upon a mortgage, after a failure to pay by the mortgagor, and for the benefit of the mortgagee, notwithstanding the language of the act vesting the seisin in fee in the commissioners, free and clear of the equity of redemption, the court holding that the mortgagor still had a right to insist upon a compliance with the statute in the sale, and giving notice thereof; and the chancellor, at page 344, says, "A special authority must be strictly pursued, and every purchaser is to be presumed to know that special authority in this case, for it is contained in the act, and if he purchases in a case in which that special authority was not pursued, he purchases at his peril." This remark was made in relation to a notice of sale after a confessed default in payment and the vesting of the title in the commissioners, and when they have an undoubted right to sell upon giving the required notice. The chancellor evidently saw nothing like a jurisdiction in the premises which would cover up irregularities, or dispense with proof of the regularity prior to the actual sale. The power to sell then became perfect, and not before, and only by the performance of all the pre-requisites.

---

Hill *v*. Draper.

---

In *Jackson* v. *Cook*, (7 *Cow*. 88,) the court decided that a plaintiff claiming title under a sale to pay the United States direct tax, must prove that the various steps preliminary to the sale required by the act, had been taken, e. g. that the tax was demanded at the dwelling house of the man to whom it was assessed, and that sufficient goods to satisfy this tax could not be found, following the case of *Williams* v. *Peyton*, the reasoning and principles of which were adopted as applicable to, and controlling the case then before the court, and sustaining a nonsuit which had been ordered at the circuit, for the want of competent proof of a compliance on the part of the collector, with the conditions precedent to his authority to sell and convey the land.    The principles decided in 4 *Wheat.* 79, and 7 *Cowen*, 88, are recognized and followed in *Jackson* v. *Esty*, (7 *Wend.* 148,) and those cases cited with approbation, and again in *Atkins* v. *Kinnan*, (20 *Wend.*, 241,) the court by Cowen, J. saying at page 242, " when certain steps are authorized by statute in derogation of the common law, by which the title of one is to be divested and transferred to another, every requisite having the semblance of benefit to the former, must be strictly complied with."    In that case a deed upon a sale under a surrogate's order was held inoperative, because it did not set forth at large the order of sale, as was required by the statute. (*See also Waldron* v. *McComb*, 1 *Hill*, 111, and *Bloom* v. *Burdick*, *Id.* 136, and cases cited, and per *Cowen*, *J.* in *Bush* v. *Davis*, 16 *Wend.* 554; *Corwin* v. *Merritt*, 3 *Barb. Sup. C. Rep.* 341; *Harrington* v. *The People*, (6 *Id.* 608.)    *Sharp* v. *Speir*, (4 *Hill*, 76,) was an action of ejectment for a lot of land in the city of Brooklyn.    The defendant sought to make title under an assessment and sale for making a pump, &c. in a street in said city.    Bronson, J. in deciding the case, considers elaborately the principles which govern in such cases, and adopting and referring to the cases cited, says, that the party claiming under such a title "must show step by step that every thing has been done which the statute makes essential to the due execution of the power.    It matters not that it may be difficult for the purchaser to comply with such a rule.    It is his business to collect and preserve all

the facts and muniments upon which the validity of his title depends. (*See also Sharp* v. *Johnson,* 4 *Hill,* 92.) The same principles are laid down and enforced in an elaborate opinion in *Varick* v. *Tallman,* (2 *Barb. Sup. C. Rep.* 113,) in which the plaintiff in an action of ejectment sought to recover upon a comptroller's deed given upon a sale for taxes. The cases of *Williams* v. *Peyton,* and *Jackson* v. *Shepard,* are cited, and the arguments of the judges, and the principles upon which these cases were decided, fully approved. The plaintiffs gave no evidence whatever that the statutory requirements had been complied with by the surveyor general, giving him authority to sell, and his deed must, therefore, be declared to be inoperative and void. · The plaintiffs claim that by the terms of the statute the deed is made to vest a good title in the purchaser. The language of Gridley, J. in answer to the same point taken under a statute in the same words, sufficiently answers the objection here, to wit. This provision was, probably, intended merely as descriptive of the estate which the purchaser acquired by means of his purchase, and the conveyance of the comptroller, and not as a statutory declaration that the deed should be evidence of the existence of the facts necessary to confer on that officer the right to sell;" and referring to *Jackson* v. *Morse,* (18 *John.* 441,) as authority for this view. (*Varick* v. *Tallman, supra.*

I think the judgment should be affirmed.

HUBBARD J. concurred.

GRIDLEY, P. J. The judge who held the circuit granted the nonsuit on the ground that the plaintiffs were bound to prove that the surveyor general gave the six weeks' notice of the sale, pursuant to the act authorizing him to sell. An exception was taken to this ruling, and the question presented for our decision is, whether the ruling was right. The nonsuit is understood to have been granted and is now sought to be upheld on the principle decided in *Varick* v. *Tallman,* (2 *Barb. Sup. C. Rep.* 113,) and *Striker* v. *Kelly,* (2 *Denio,* 323.) In the first of these causes, a comptroller's deed was held not to be any evidence of

an authority in the comptroller to sell the land ; and in the last case, a lease executed by a municipal corporation, on a sale for taxes, was adjudged to furnish no evidence of a power to sell the land for the non-payment of taxes, in the absence of the affidavit required by the act of 1816. The affidavit was held to be a *condition* on which the power to sell was made to depend. In both cases the conveyances were declared by the statute to be evidence of the *regularity* of the sale, and as to that particular fact no question was made : the publication of notice, the time during which it was published, and all other incidents of the sale, being proved by the deed in the one case, and by the lease in the other. The defect in the proof, was, that there was no evidence of the *power of the officer to make the sale.* Evidence of a tax, duly assessed, which remained unpaid after the officer had done his duty, as prescribed by the statute, was wanting. To authorize the comptroller to sell a particular lot of land, it should appear that a tax was duly assessed on the individual owner, and that it should be returned to the comptroller as unpaid. There was no evidence of these facts in the case of *Varick* v. *Tallman.* Now let us examine the facts in the case at bar. In 1782, an act was passed by the legislature of New-York, for carrying into effect the acts of congress, giving a bounty in land to the officers and soldiers of the New-York line ; and devoting to that object a large tract of land, by metes and bounds, lying in the central part of this state, and embracing the premises in question. (1 *Greenl. Laws, p.* 55.) In the year 1788, the legislature of the state imposed on the patentees of the lots in this tract, the duty of having the same surveyed by the surveyor general at their own expense. In 1789, the surveyor general was directed by law to survey out townships enough for the claimants of these bounty lands, to make a map of the townships and divide the townships into lots. By the act of the 6th of April, 1790, it was made the duty of the surveyor general to cause each township to be surveyed into lots containing six hundred acres each. The third section of the act provides for the payment of the surveyor general and his agents and assistants. The next section directs fifty acres to be surveyed out in one of the corners of each lot,

and subjects the said fifty acres to the payment of forty-eight shillings as a compensation for the surveyor's services in making, marking and surveying the said lots. It further provides, that if the said forty-eight shillings shall remain unpaid for two years, *then* it is made the *duty* of the surveyor general, and he is required by the law, to sell the premises at public vendue after a six weeks' notice thereof, published in one of the newspapers of the state ; and then the act proceeds to *declare*, as a consequence of such sale, that the purchasers shall be *vested with the fee of the said lands*, by a deed from the surveyor general. By an amendment of this act, passed March 22d, 1791, the surveyor general was directed to sell these lands, if the forty-eight shillings remained unpaid at any time after the first day of July, 1792.

Here then was the power of sale distinctly given by the legislature in the most *explicit terms*. The tax was imposed, not on the *person*, but on the *land*—on *each fifty acres, by the act itself:* and it was made the duty of the surveyor general to sell the premises, if the forty-eight shillings should not be paid by the first day of July, 1792. Having the power to sell for the non-payment of the tax, the law will not compel the purchaser to prove a negative, (viz.) the non-payment of the tax ; a fact which would involve the most culpable negligence (not to say fraud) in the officer who should sell under such circumstances. It was held, accordingly, in *Jackson* v. *Morse*, (18 *John. R.* 441,) that payment of the tax would subvert the comptroller's deed ; but that the burden of proving such payment lay on the party who set up that fact in his defense.

We now come to the question whether it was necessary for the plaintiffs to prove that the surveyor general gave six weeks' notice of the sale, previous to the 16th day of July, 1792, by a publication in one of the newspapers published in this state. Several cases have been referred to as establishing the affirmative of this proposition. Among these is the case of *Stead's Executors* v. *Course*, (4 *Cranch*, 403.) This case was a writ of error to the circuit court, for the district of Georgia. By the tax laws of Georgia for 1790 and 1791, the collector was au-

Hill *v.* Draper.

thorized to sell land *only* on the deficiency of personal estate, and then only enough to pay the taxes in arrear. It appearing that the collector sold a large tract of land unnecessarily, for the payment of a small tax, the sale was held void. Marshall, Ch. J. says, " It is true that full evidence of every minute circumstance ought not, especially *at a distant day*, to be required. From the establishment of some facts, it is possible that others may be presumed, and less than positive evidence may establish facts. In this case a sound discretion must be exercised; but it is incumbent on the vendee to prove *the authority to sell.*" In *Parker* v. *Rule's Lessee,* (9 *Cranch,* 64,) it was decided that " a collector who wholly omitted to advertise the copy of the lists of lands, with a statement of the amount of the tax, and a notification to pay the same, for 60 days, in four gazettes of the state, pursuant to the act to levy and collect a direct tax within the United States ;" (*vol. 4, p.* 212;)—the proprietor being unknown—*had no power to sell,* and his deed *was void.* The eleventh section of the act made it the duty of the collector, in the case of non-resident lands which were unoccupied, to transmit certified copies of the assessment lists to the surveyor of the revenue of the districts respectively, and to publish the lists, &c. in the manner above mentioned, *in the place of a personal service;* and THEN he might proceed to collect the tax by distress. In the absence of any proof of this publication, which was thus made a substitute for a personal demand of the tax, it was held that he had omitted a condition, on the performance of which alone, his authority to sell was made by the act to depend. Again, in the case of *Williams* v. *Peyton's Lessee,* (4 *Wheaton,* 77,) a construction was again given to the directions of the act, which require the publication of the advertisement before mentioned, as a condition of sale, and the same interpretation was again given to the act. In truth, the publication of these lists in the four papers of the state, was declared to be necessary in order to confer on the collector the power of sale; and hence the court employ the language as to the publication of the notices in this case, which is substantially re-stated in *Sharp* v. *Speir,* (4 *Hill,* 76,) and in *Striker* v. *Kelly,* (7 *Hill,* 25,) to

Hill v. Draper.

the effect, that the power to sell land for taxes is a naked pow-er, and its due execution is not to be made out by intendment, but must be proved; that it matters not how difficult it may be for the purchaser to make the proof; he must nevertheless show, step by step, that every thing has been done which the statute makes essential to confer on the officer the power to sell. Now, all this is true when applied to a case where the publication of notices or the performance of any other act is made necessary to clothe the officer with the jurisdiction to sell; then, such *publication*, like the performance of any other condition, must be proved. Until an officer has acquired jurisdiction to sell, there is no case for the presumption in favor of official acts. But when the law has clothed him with the power to sell, and made it his duty to sell, by an explicit statutory direction, *then* the law comes in with its benign presumption in favor of official acts, after the lapse of over half a century, and dispenses with the proof of all matters, merely affecting the regularity of the sale, or in other words, affecting the honesty and fidelity and ac-curacy of the officer in the discharge of a duty which the law itself had imposed upon him.

It can not, with any show of reason, be insisted that in the case under consideration, the publication of a notice was made a condition precedent, of the power to sell. In the case of *Jackson* v. *Young*, (5 *Cowen*, 269,) where the statute made it the duty of the sheriff to file a certificate of sale within ten days, it was held that this positive mandate was *directory* merely, and not a condition of the right to convey the land in pursuance of the sale. In the *People* v. *Allen*, (6 *Wend.* 486,) it was determined that a court martial was lawfully constituted under an order made long after the time within which it was directed to be done by a positive injunction of the act. In Mas-sachusetts, (3 *Mass. Rep.* 230,) it has been decided that a warrant issued by the trustees of a school district, to collect a tax for a school house, was valid, notwithstanding it was made after the expiration of the 30 days prescribed by the act. In *Dutton* v. *Kelsey*, (2 *Wend.* 615,) a constable's bond was held to be filed in due time, although it was not filed till after the

Hill v. Draper.

expiration of ten days, and although the statute declared that if not filled within ten days, that fact should be evidence of a refusal to serve, and the office should be deemed vacant. In *The State* v. *Click*, the provisions of a statute, that the secretary of state should cause it to be published " three months," was directory only, and did not defeat the operation of the statute. (2 *Ala. Rep.* 26.) In some of these cases it was strenuously urged, that the statute should be followed strictly where the proceeding was a special one authorized only by the statute itself, and void if not so followed. But it was held in each case that the statute was directory merely, and need not be followed. So in this case, the publication of the notice should be held to be directory, and not of the essence of the act. The direction in the act is, " to sell after six weeks' notice," without making any provision for the preservation of the evidence of the publication ; and as the paper in which the publication was to be made was not specified in the act, the purchaser would have no means of collecting and preserving the evidence. Again, the legislature relied upon the fidelity of the surveyor general, knowing that having clothed him with the power and imposed on him the duty to sell, the court would presume he had done his duty.

It has been seen that the case of *Striker* v. *Kelley*, (2 *Denio*, 323,) was decided on the ground that the *power to sell* was not proved. The court of errors, with one exception, unanimously held that an affidavit, such as the act of 1816 prescribes, was essential to lay the foundation of the power to sell, but it was admitted that the publication of notices, &c., merely affected the regularity of the sale, and was not necessary to confer jurisdiction.

I repeat, therefore, that in the case at bar, the jurisdiction to sell each particular lot was expressly given by the act, and the officer was DIRECTED to give a six weeks' notice of the sale. No provision was made to preserve the evidence of performing this direction ; fifty-eight years have elapsed since the sale was made, and no living witness survives to show that the surveyor general performed his duty and obeyed the mandate of the

Hill *v.* Draper.

statute. Had he omitted to do so, he would have been guilty of the most culpable negligence; and in all cases where the omission of an act would involve a charge of culpable negligence in an officer, the performance of an act will be presumed. (19 *John.* 345. 3 *East,* 192. 10 *Id.* 216.) The distinction between the cases in which a presumption in favor of official duty will be entertained, and those in which it will not be, is thus stated in *Rudd* v. *Johnson,* (5 *Litt. Rep.* 19, *cited in* 1 *C. & Hill's Notes, p.* 297.) In a case where a sheriff had received money after the return day of the process, the court were asked to *presume* that he had levied before the return day, which act alone would give him power officially to receive money afterwards. But they would not presume that, saying, "where a fact is necessary to *confer authority,* it is not to be *presumed, though every proper official step will be presumed after authority is shown."* And among a great number of cases cited by Messrs. Cowen and Hill, ( 1 *C. & H.* 297,) where such presumptions have been allowed, it is stated that it will be presumed "that a register's sale was duly advertised; that a sheriff's sale was according to his duty; that he returned an execution in due time, and that he gave due notice of sale." Our own reports also furnish as perfect illustrations of this distinction, in the case of sales under proceedings in the surrogate's court. Facts to confer jurisdiction must be proved, or all is void; but when jurisdiction is once established, then every presumption will be entertained to uphold the proceedings. (4 *Wend. Rep.* 435, 543. 10 *Id.* 441. 12 *Id.* 533. 13 *Id.* 465. 15 *Id.* 449.)

Again; the case of *Jackson* v. *Oltz,* (2 *Wend.* 537,) is an authority under this very act. It is true, that this particular question does not appear to have been raised, but a far graver question was raised and decided, viz.: that the notice, in order to be a six weeks' notice, would be presumed to have been published *before the first of July,* 1792, and that such publication would satisfy the law. The presumption of notice duly published is clearly involved in that decision, and no one can doubt how it would have been decided if it had been raised. On the

whole, I am satisfied that this is a proper case to presume the publication of notice pursuant to the statute directing the sale of the lots, and as the non-suit was placed on that ground by the judge at circuit, I have not looked into the other grounds on which the motion was founded.

I think a new trial should be granted.

Judgment affirmed.

WASHINGTON GENERAL TERM, January, 1851.  *Willard, Hand, and Cady,* Justices.